(No. 32747.-

The People of the State of Illinois, Defendant in Error, *vs.* Nelson Howarth *et al.*, Plaintiffs in Error.

*Opinion filed September 24, 1953.*

500

BROWN, HAY & STEVENS, and NELSON O. HOWARTH, both of Springfield, (PAUL W. GORDON, and JOHN B. STODDART, JR., of counsel,) for plaintiffs in error.

LATHAM CASTLE, Attorney General, of Springfield, and C. MARVIN HAMILTON, State's Attorney, of Lincoln, (JOHN L. DAVIDSON, JR., FRED G. LEACH, and HARRY L. PATE, of counsel,) for the People.

RICHARD F. BABCOCK, LEON M. DESPRES, F. RAYMOND MARK, JR., and GEORGE W. OVERTON, all of Chicago, for American Civil Liberties Union, *amicus curiae;* ALEX ELSON, and G. NORMAN KENNEDY, both of Chicago, and GEORGE F. NICHOLS, of Dixon, for Illinois State Bar Association, *amicus curiae;* and CLAUDE M. SWANSON, of Paxton, *amicus curiae.*

Mr. Justice Hershey delivered the opinion of the court:

On November 6, 1952, Nelson A. Howarth, an attorney, together with Alan Wyneken and LeRoy Clapper, his clients, were adjudged to be in contempt of court in the filing of a certain petition in the circuit court of Logan County, were each ordered to pay fines, and received separate jail sentences. They appear in this court as plaintiffs in error prosecuting a writ of error to the circuit court of Logan County to review the judgment and orders of that court, urging that the acts with which they were charged do not constitute criminal contempt, and that they have been denied certain constitutional rights. A constitutional question being presented, the cause comes here directly.

It appears from the record that an organization in Lincoln, Illinois, known as the Good Government Council, had caused an audit to be made of the books of one Vincent Jones, justice of the peace in and for East Lincoln Township in Logan County. That audit purported to show discrepancies and omissions in the books of Jones when compared with certain records of the highway police of the State of Illinois. This audit was turned over to Edwin C. Mills, State's Attorney of Logan County. After a delay of about two weeks, nothing having been done by the State's Attorney, several members of the Good Government Council caused a warrant to be issued for the arrest of Jones on a charge of embezzlement. The State's Attorney, by letter to Judge Bevan, judge of the circuit court, requested that he be relieved of the duty of prosecuting Jones. His request was denied and he thereafter presented the evidence to the grand jury. Indictments were returned against Jones on June 4, 1952, who then filed motions to quash the indictments. Hearing on said motions was set for July 23, 1952.

The Good Government Council then retained Howarth to prepare a petition directed to the circuit court requesting the appointment of a special prosecutor. Twenty copies of

this petition were circulated and a total of 586 signatures procured. These petitions were assembled and consolidated by removing the first three identical typewritten pages of eight copies, and presented by Howarth to the court on July 21, 1952. Among other things, the petition alleged that the State's Attorney, by informal letter to the court more than a month after issuance of the warrants, admitted that he "had not yet checked the accuracy of the allegations made in said complaint," that he had made no effort to confer with or to interview those citizens who signed the original complaint except to advise them that he intended to withdraw as prosecutor, and that petitioners believed the State's Attorney would use the hearings on the motions to quash, not for the purpose of defending the indictments, but to intimidate, harass and subject to public ridicule certain members of the Good Government Council. The petition prayed that the hearings on the motions to quash the indictments be continued, and that the State's Attorney be permitted to withdraw and a disinterested attorney be appointed to prosecute the causes.

A hearing on the petition was had July 22, 1952. There the State's Attorney asked leave to join in the prayer of the petition, but controverted certain allegations of fact therein. The court took no action on this request, nor on an offer by Howarth to withdraw the petition if the State's Attorney was permitted to withdraw. The petitioners then presented evidence as to the manner of procuring the signatures and as to their belief that the allegations were true. After a colloquy between the court and Howarth concerning the form and allegations of the petition, the court continued the cause to July 30, 1952. On that date Judge Bevan entered an order relieving the State's Attorney from prosecuting the Vincent Jones case, and then read an order on these plaintiffs in error and the other petitioners (578 persons more or less) to appear in the circuit court of Logan County on August 13, 1952, to show cause why

they should not be adjudged in contempt of court for
(1) having filed in that court a document containing pages
taken from altered instruments, (2) having filed a docu-
ment containing odious and defamatory language concern-
ing an official of that court, and (3) having filed a petition
containing an inaccurate quotation where the accuracy of
the quotation might materially affect the decision of the
court. Judge Bevan refused to disqualify himself.

On August 13, 1952, approximately 500 petitioners and
Howarth appeared in court with their counsel. Twelve
petitioners filed verified answers denying any knowledge
of the petition and were discharged by the court. The court
then appointed State's Attorney Claude Swanson of Ford
County to act as *amicus curiae* in the contempt proceedings.
The court then discharged twelve more petitioners, who,
upon examination by Swanson, stated they did not read
the petition before signing it. The court refused to allow
Howarth to cross-examine any but one of these twelve.
The court subsequently discharged seven others upon their
filing verified answers denying knowledge of the contents
of the petition.

Howarth and almost all of the petitioners, including
Wyneken and Clapper, filed written motions to quash the
rule to show cause, based upon the proposition that the acts
charged did not constitute contempt of court, that the rule
charges indirect contempt requiring that they be served
with signed, verified charges, and asserting a denial of
certain constitutional rights. These motions were over-
ruled. Motions to suppress the taking of evidence were also
overruled. The court then entered a rule on Howarth and
all petitioners who had participated in the hearings on
July 22, 1952, to plead to the rule to show cause on or
before October 8, 1952, and all other petitioners were to
plead on or before November 5, 1952. Motion was made
to discharge all those who had not appeared in court July 22

as they could not therefore be guilty of direct contempt, but the court overruled the motion.

On October 8 Judge Bevan again refused to disqualify himself and overruled motions for jury trial based on constitutional grounds. Thirty-one defendants, including these plaintiffs in error, then filed answers alleging in detail the acts performed by them in connection with the petition. The remaining petitioners filed an unverified answer denying their guilt.

On November 1, 1952, the court entered its judgment and order. The court found plaintiffs in error to be in contempt for the filing of an "altered" petition in court, which deceived the court and constituted a fraud upon the court and was done by plaintiffs in error with the deliberate intent of intimidating the court and impeding and obstructing the functioning of the court. Howarth was also found guilty of contempt for misquoting the letter of State's Attorney Mills to the circuit court. All other petitioners were discharged. Wyneken and Clapper were each fined $250 and sentenced to two days in jail. Howarth was fined $500 and sentenced to five days in jail.

On November 13, 1952, plaintiffs in error filed a written exception to that part of the judgment reading "from the evidence adduced," as no evidence had been taken against them under the rule to show cause, and filed a motion in arrest of judgment covering the same points urged in the motion to quash previously filed and argued, and additionally objected to the court's refusal to disqualify himself and the denial of a jury trial, questioned the sufficiency of the judgment, and objected to procedural irregularities in the hearing. The exception was overruled and the motion denied.

Plaintiffs in error appear before this court, having been found guilty of direct criminal contempt in the circuit court of Logan County. A criminal contempt of court is

a crime against the court and against the people and is a misdemeanor, and a writ of error in such a proceeding is properly sued out of the Appellate Court unless there is fairly involved a debatable constitutional question which was passed upon by the trial court and the issue properly preserved for review by a bill of exceptions. In such case the writ of error may be sued out of the Supreme Court directly. *People* v. *Siegal,* 400 Ill. 208.

In the instant case plaintiffs in error claim, as the foundation for direct review, a denial of their constitutional rights to freely express themselves and to petition for a redress of grievances, and violations of the due-process clauses of the State and Federal constitutions. They contend that their constitutional right to freely express themselves was infringed for the reason that the court was obviously influenced in its judgment by what it termed "odious, defamatory language concerning an official of this Court." They insist that the right to petition for redress of grievances was denied by this contempt proceeding against more than 500 citizens of Logan County. Plaintiffs in error further contend that the acts charged in the rule to show cause, if they constituted contempt at all, constitute indirect and not direct contempt, and that they were not accorded the fair hearing with all due process of law as required in an indirect contempt proceeding.

These constitutional issues were raised and passed upon in the trial court when it denied plaintiffs in error their motion in arrest of judgment. (*People* v. *Pomeroy,* 405 Ill. 175.) The constitutional issues have properly been preserved for review, hence the writ may be sued out of this court.

Plaintiffs in error contend that because, in the rule to show cause entered upon them, one of the charges was that the petition contained "odious, defamatory language concerning an official of this court," and during the course of the hearing the court uttered statements in criticism of the

language employed, they were denied their constitutional right to freely express themselves in their petition. It is undisputed that the charge was abandoned in the judgment order entered in this cause, and no mention thereof appears throughout the opinion of the court. That the court's judgment order was influenced and colored by considerations arising from this charge is purely a conclusion of plaintiffs in error wholly unsupported by the record. The charge that the right to freely express themselves within constitutional limit has been denied them is not well taken.

It is next asserted by plaintiffs in error that the court has denied the right to petition for redress of grievances. The record indicates that the petition was filed in the circuit court of Logan County on July 21, 1952, and that a hearing was had on the petition on July 22, 1952, at which time petitioners were permitted to produce evidence in behalf of the petition and its allegations. On July 30, 1952, the court stated that acting upon the request of Edwin C. Mills and in view of the filing of the petition, it ordered that State's Attorney Mills be relieved from acting as State's Attorney in prosecuting Vincent Jones. The appointment of a special prosecutor was deferred until August 13, 1952. After the prayer of the petition for withdrawal of the State's Attorney had been granted, the court read the rule on Howarth and petitioners to show cause why they should not be held in contempt of court. The court at no time objected to the filing of this petition nor did it deny to the petitioners their right to file the same. The court's only objection was to the form and contents of the petition. Certainly, these petitioners were not deprived of their right to petition to redress their grievance in the instant case. Nothing that happened in this proceeding denies to the plaintiffs in error or any of the petitioners their right to petition in the future. Whether any of the petitioners have been so "coerced" as to be afraid to exercise their constitutional prerogative in the future is purely

speculative and on this record cannot be the basis for a finding of denial of constitutional right.

These plaintiffs in error urge that their acts constituted, if anything, indirect contempt, and to try them as for direct contempt denied them their constitutional rights to a fair hearing. The charges upon which this proceeding resulting in a finding of guilty of direct criminal contempt are based all arise from the petition filed in the circuit court of Logan County. A direct criminal contempt is one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge and tending directly to obstruct and prevent the administration of justice, and includes acts committed in an integral part of the court although out of the physical presence of the judge. An indirect contempt is one which occurs out of the presence of the judge and is therefore dependent for its proof upon evidence of some kind or upon facts of which the court has no judicial notice. (*People* v. *Harrison,* 403 Ill. 320.) The mere filing with the clerk of the court of any document containing contemptuous matter is sufficient to constitute direct contempt. (*In re Estate of Kelly,* 365 Ill. 174.) The charges here arose directly out of matter contained within the signed petition filed in the circuit court, and do not depend on any act occurring outside of an integral part of the court as an essential part of the contempt charged. Without doubt the rule to show cause charged, if anything, direct criminal contempt. It has been held that even though the charge be of direct contempt, that fact does not entirely preclude the judge from hearing evidence to fully establish the direct contempt. (*People* v. *Harrison,* 403 Ill. 320.) Where a direct contempt is committed in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. However, when a direct contempt occurs in a con-

stituent part of a court and not in the immediate presence of the judge as is the case here, extrinsic evidence is essential to substantiate the charge. (*In re Estate of Kelly,* 365 Ill. 174.) When the contempt is not an apparent one and its demonstration depends upon the proof of facts of which the court has no judicial notice, due process requires a citation in order that defendant may meet and refute the charges. (Dangel, Contempt, p. 221.) The instant proceeding being one based upon charges constituting, if anything, direct contempt, violated no constitutional rights as guaranteed by the due-process clause. The court did enter a rule to show cause for these charges of direct contempt not committed in open court, permitted answers and heard evidence, affording plaintiffs in error all the privileges they could demand. The procedure followed by the court in this proceeding was the proper one for the direct contempts charged. The plaintiffs in error were not denied any of the constitutional prerogatives which they have asserted here.

The rule entered by the court in the present case directed the plaintiffs in error to show cause why they should not be adjudged in contempt for having done three things, (1) having filed in that court a document containing pages taken from an altered instrument; (2) for filing a document containing odious and defamatory language concerning an official of that court; and (3) having filed a petition containing an inaccurate quotation where the accuracy of the quotation might materially affect the decision of the court.

Plaintiffs in error contend that the filing of a consolidated petition does not amount to an act of contempt. The judgment order states that the filing of the petition did "deceive the Court and constituted a fraud upon the Court," for the reason that it was an altered instrument. These plaintiffs in error were found by the court to have participated in, and shared the responsibility for, filing the

petition in this manner. The court nowhere stated in what manner it was deceived or in what way the filing of the petition constituted a fraud upon the court. There is no contention that the signatures on the petition as filed were not genuine. The court seems to base its determination on the fact that the petition as filed is a consolidated petition.

We have noted that twenty identical petitions were circulated to obtain signatures. These identical petitions consisted of three full pages of typing and a fourth page upon which some typing appeared and the remaining space was devoted to signatures. The remaining pages were signatures only. In assembling the petitions, for the sake of compactness and brevity, the first three identical pages of several petitions were removed but the fourth page and all of the signature pages were retained and incorporated in the petition filed. A number of complete petitions, including the first three pages of typing, were incorporated in the petition as filed. The testimony of the witnesses and the answers of the plaintiffs in error clearly show that the only purpose was to reduce the bulk of the petition. Without doubt the court was apprised of this fact and recognized it in its rule to show cause. Obviously, the court was not deceived. Had such been the purpose of the petitioners it is clear that the fourth page of the petitions would also have been removed so as to present only a petition followed by nothing but signatures. Nothing that occurred in the consolidation of these several petitions into one compact petition changed the legal significance of the petition as signed. No allegation, statement, prayer, sentence or phrase was changed in any manner. Only the physical appearance was altered. It has been held in Illinois that where the legal effect is not changed the instrument is not altered, although some change may be made in its appearance. To effect an alteration the change must be material. If the legal import of the instrument is not changed the alteration cannot be material, nor fraudulent. (*Ryan* v. *First Nat.*

*Bank,* 148 Ill. 349; *Vogle* v. *Ripper,* 34 Ill. 100.) The change in physical appearance alone could not be material, and the petition does not constitute an altered instrument. No certain number of signatures was necessary to the validity of this petition, and several of the circulated petitions were filed intact as circulated. No fraud or deceit could possibly have resulted from the filing of this petition, especially in the light of the information accorded the trial court. Consequently, the filing of this consolidated petition constitutes no basis for a finding of contempt.

The judgment order here fails to make any reference or finding concerning the second charge of the rule to show cause, to wit, the filing of a document containing odious and defamatory language concerning an official of the court. Apparently this allegedly contemptuous act is abandoned by the court and does not serve as a basis for the judgment order. It is undisputed that this charge is not before this court for review.

The only other formal charge referred to in the judgment order is charge 3, which is to the effect that the petitioners filed a petition containing an inaccurate quotation where the accuracy of the quotation might materially affect the decision of the court. It is true, in the preparation of the petition a letter from the State's Attorney to Judge Bevan was misquoted. As to whether or not this was the basis for entering the judgment order is not altogether clear. However, the court in said order does refer to the inaccurate quotation and places the responsibility therefor on the plaintiff in error Howarth. Howarth assumed responsibility for the misquotation at the hearing on the petition of July 22, and in his answer explained that the mistake occurred in summarizing the letter for brevity's sake and failing to remove quotation marks. The language appearing in the petition did not in any material respect change the meaning of the State's Attorney's letter. It is impossible that the court could have been deceived or mis-

led as the identified letter was at all times in the possession of the court. The petitioners and their counsel knew it was in the court's possession, and therefore it is not reasonable to believe that the inaccurate quotation from said letter was intentionally made. It is impossible that the misquotation could have embarrassed, hindered or obstructed the court in the administration of justice or lessened its authority or dignity. This inadvertence could not have amounted to contempt in this case.

Although not included as one of the charges in the rule to show cause entered by the court in this case, the judgment order contained a finding that the filing of the petition was an attempt to "pressurize" the court. The written opinion of the trial judge stated that the Good Government Council, which he refers to as a "dominating group," by sheer numbers attempted to exert political pressure upon him and subject him to the fear of political reprisals if he failed to do their bidding. This statement from the opinion of the trial judge is the only indication appearing anywhere as to the type of "pressurizing" to which his order refers.

Since the charge of exerting pressure upon the court to enter an order appointing a special prosecutor is not one of the charges set forth in the rule to show cause, a finding of direct contempt based thereon is of a summary nature. It has been held by this court that in cases of direct contempt, where the contempt is committed in the presence of the judge and he is aware of all the circumstances, the accused may be summarily found to be in contempt. (*People v. Siegal,* 400 Ill. 208.) In cases of direct contempt the only record required to be made up is the order of the court finding the contempt to have been committed and fixing the punishment therefor, which order, however, should set out the facts constituting the offense so fully and certainly as to show that the court was authorized to make the order. (*People v. Rongetti,* 344 Ill. 107.) The judgment order entered in this case merely found the

plaintiffs in error guilty of contempt for attempting to "pressurize" the court without any statement of facts constituting the offense. The statement regarding the attempt to "pressurize" in the judge's opinion only identifies the type of alleged pressure. Obviously, we cannot from this record perceive whether the court was authorized to make such an order. This part of the judgment order amounts to a mere conclusion of the trial judge unsupported by any findings of fact constituting the offense, and cannot be the basis for a finding of contempt.

It is broadly asserted by defendant in error that the filing of this kind of a petition without leave, and not being parties to the litigation or counsel therein, constituted contempt. However, it is provided by section 6 of the act in regard to Attorneys General and State's Attorneys (Ill. Rev. Stat. 1951, chap. 14, par. 6,) that a special prosecutor may be appointed by the court before whom a cause is pending when the State's Attorney is interested in the particular cause or proceeding. The statute does not specify the procedure to be followed in bringing such matter to the court's attention and invoking its action. It has been determined that the filing of a petition is the proper method of arousing the court's jurisdiction to appoint a special prosecutor, and that the State's Attorney may properly file such petition. (*Lavin* v. *Board of Comrs. of Cook County,* 245 Ill. 496.) That opinion, however, made no determination that *only* a State's Attorney could file such a petition, and subsequently the Appellate Court for the First District went even further and held that, "True, the jurisdiction of the court in that respect may be thus invoked [by State's Attorney's petition,] but such jurisdiction may also be properly invoked by the court upon its own motion or upon the petition of a citizen." (*People ex rel. Hoyne* v. *Northup,* 184 Ill. App. 638.) While a decision of an Appellate Court is not authority in this court, but advisory only, we can see no reason to disagree with this pronouncement.

Hence, we adopt it as applicable to the instant case. This petition was filed by citizens to invoke the jurisdiction and action of the court and cannot alone constitute contempt.

No contempt having been committed by these plaintiffs in error on any of the grounds assigned in the judgment of the trial court, the determination cannot stand. Accordingly, the judgment of the circuit court of Logan County is reversed.

*Judgment reversed.*