*In re* L.A.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. L.A.S., Respondent-Appellant).

Fourth District   No. 4—84—0594

Opinion filed April 24, 1985.

MILLS, J., dissenting.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Robert J. Biderman and Gwendolyn Klingler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

The respondent-minor, L.A.S., age 16, was found in direct criminal contempt for her failure to reappear in the courtroom after a recess during her hearing on a report of violation of probation. She was ordered to spend 30 days in the county jail. The minor appeals from the judgment of the circuit court of Macon County, arguing that her failure to reappear in the courtroom after the recess did not consti-

tute direct criminal contempt.

On April 30, 1984, L.A.S. was adjudicated a delinquent minor and made a ward of the court for having committed retail theft. She was placed on 18 months' probation with conditions including her participation in the Unified Delinquency Intervention Services Program and performance of community service through the Probation Plus Program. On May 9, 1984, a detention warrant was issued on the basis of a report that the minor had left her home on May 6, 1984, and had not returned. The minor was detained on the warrant on May 31, 1984. A detention hearing was conducted on June 1, 1984, and the minor was ordered released to the custody of her mother pending a hearing scheduled for June 8, 1984, on the report of violation of probation connected with her leaving home.

The record reflects that the minor was next detained without a warrant on June 2, 1984, in connection with an armed robbery. A detention hearing was conducted on June 4, 1984, and the minor was ordered detained in the juvenile detention quarters pending a hearing scheduled on June 8, 1984. A second report of probation violation was filed in connection with the armed robbery. At the hearing on June 8, 1984, the minor denied the allegations of each report of violation of probation, the cause was allotted for a hearing on the reports set for July 24, 1984, and the minor was ordered released to the custody of her mother.

Later in the month of June 1984, the minor absented herself from her placement in the home of her mother without authority, and a detention warrant was issued on July 2, 1984. The minor was taken into custody on June 30, 1984, by authorities in the State of Kansas. On July 5, 1984, the detention warrant was filed, showing it had been executed, with the minor detained on July 3, 1984. A detention hearing was conducted on July 6, 1984, and the minor was ordered detained in the juvenile detention quarters pending a hearing set for July 13, 1984. At hearing on July 13, 1984, the minor's motion to be released to the custody of her mother pending a hearing on the reports of violation of probation was denied, and the minor was remanded to the custody of the sheriff pending the hearing. On July 24, 1984, the cause was continued due to the unavailability of material witnesses, and the cause allotted for hearing on August 2, 1984. The minor was released to the custody of her mother, and the conditions of the minor's probation were modified so she was not to be outside her residence unless in the company of her parent or another responsible relative.

On July 25, 1984, a petition to terminate the minor's probation

was filed, stating as grounds that (1) on or about May 6, 1984, L.A.S. left home without permission until taken into custody about May 31, 1984; (2) she committed the offense of armed robbery on or about June 2, 1984; and (3) on a date after June 8, 1984, she left home without permission and was taken into custody in the State of Kansas on June 30, 1984.

On August 2, 1984, the cause was called for hearing on the probation violation report based on the armed robbery of June 2, 1984. The minor was present with her mother. L.A.S. was identified by police officer witnesses and the victim of the armed robbery. Following the testimony of these witnesses, the court stated it would take a 10-minute recess. After the recess, the judge accepted a stipulation regarding the minor's age and then questioned the assistant public defender and the minor's mother as to the minor's location. Neither knew where she was. The judge ordered a detention warrant to issue and recessed the cause until service of the warrant, concluding that he could not proceed in the minor's absence.

The record shows that the minor was detained pursuant to the latter warrant on August 12, 1984, and a detention hearing was set for August 14, 1984.

At the inception of the detention hearing, the judge stated that he was going to find the minor in direct criminal contempt of court. Respondent's counsel argued that the minor's failure to return to the courtroom on August 2 was not direct criminal contempt of court, but, at most, if wilful and proved by extrinsic facts, indirect criminal contempt, and that respondent could not be summarily punished without the opportunity to exercise her due process rights. Counsel cited *People v. McNeil* (1976), 42 Ill. App. 3d 1036, 356 N.E.2d 1073, involving an attorney charged by petition for a rule to show cause why he should not be held in contempt of court for his failure to appear at the time allotted for trial in a cause in which he was the attorney of record. The circuit court rejected counsel's argument:

> "In this particular case we were in the middle of the trial, and it was in the presence of the Court that she failed to appear. Obviously \*\*\* she doesn't \*\*\* come into court and then just leave when she feels up to it. The actions were done subsequent to the trial starting. Her conduct was done in effect in the presence of the Court, and it is direct criminal contempt of court, and I am going to so hold.
>
> \* \* \*
>
> Show first of all, On August 2, 1984, at the conclusion of the Petitioner's case and prior to the commencement of the Re-

spondent minor's case, the minor wilfully absented herself from the courtroom, Court House and was later detained pursuant to warrant issued. It is the further finding of the Court that such conduct was calculated to, and in fact did embarrass, hinder and obstruct the Court in its administration of justice and did derogate from its authority and dignity and did bring the administration of justice into disrepute."

■ Criminal contempt of court is generally defined as conduct which is calculated to embarrass, hinder, or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670.

■ ■ A *direct* criminal contempt is one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge, and tending directly to obstruct and prevent the administration of justice. (*People v. Howarth* (1953), 415 Ill. 499, 114 N.E.2d 785.) Where a direct contempt is committed in open court, it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. (*In re Estate of Kelly* (1936), 365 Ill. 174, 6 N.E.2d 113.) The Illinois Supreme Court noted in *People v. Loughran* (1954), 2 Ill. 2d 258, 263, 118 N.E.2d 310, 313:

"In a direct criminal contempt proceeding, that is, for contempts committed in the presence of the judge, in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required."

By contrast, *indirect* criminal contempt occurs outside the presence of the judge and is, therefore, dependent for its proof upon evidence of some kind or upon facts of which the court has no judicial notice. (*People v. Howarth* (1953), 415 Ill. 499, 114 N.E.2d 785.) An indirect contempt is one which in whole or in essential part occurred out of the presence of the court and is, therefore, dependent for its proof upon evidence of some kind. *People v. Pomeroy* (1950), 405 Ill. 175, 90 N.E.2d 102.

In arguing that her conduct did not constitute direct criminal contempt, the minor-respondent cites *People v. Pincham* (1976), 38 Ill. App. 3d 1043, 350 N.E.2d 67, *People v. McNeil* (1976), 42 Ill. App. 3d 1036, 356 N.E.2d 1073, and *People v. McDonnell* (1940), 307 Ill. App. 368, 30 N.E.2d 80, *aff'd* (1941), 377 Ill. 568, 37 N.E.2d 159. In *Pincham*, an attorney faced a scheduling conflict in two murder trials. He sent his law clerk to the judge to explain that his absence was caused

by his engagement before another judge. After a summary hearing on a rule to show cause, the attorney was found guilty of wilful contempt for his failure to appear in court, thereby delaying the start of the previously scheduled trial for an entire day. Our sister appellate court reversed the trial court's finding of direct contempt on the following reasoning:

> "The courts in Illinois have held that the unexplained absence of an attorney at trial may be grounds for indirect, but not direct, contempt. (*Geraty v. Carbona Products Co.*, 16 Ill. App. 3d 702, 306 N.E.2d 544; *People v. Westbrooks*, 242 Ill. App. 338.) Among the reasons advanced for classifying such conduct as grounds for indirect contempt are: (1) *a court confronted with such conduct* on the part of an attorney *is unable to ascertain by its own observation and without inquiry the operational facts from which an inference of wilfulness or of wrongful intent can be drawn,* and (2) it is illogical for a court to determine that an attorney's failure to be present constitutes a contempt committed in the court's presence when *by the very nature of the offense the offender and his acts are not in the court's presence*. These are valid reasons and in applying them to the instant case, we hold that defendant's absence could not have constituted direct contempt and the trial court's judgment was erroneous.
>
> It is obvious from the record that the trial court was dependent for its knowledge upon the report of its bailiff. The finding of guilt at least in part was necessarily based upon facts outside the personal knowledge of the judge, which facts would not come within his judicial knowledge, but must be determined by the taking of testimony. The contempt therefore, if any, was an indirect contempt, entitling defendant to the constitutional rights of advance notice, a full hearing, counsel, and confrontation. Being given only the opportunity to testify in one's own behalf falls short of satisfying the requirement. See *People v. Jashunsky*, 51 Ill. 2d 220, 282 N.E.2d 1, *cert. denied*, 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332, and 409 U.S. 984, 34 L. Ed. 2d 249, 93 S. Ct. 333." (Emphasis added.) 38 Ill. App. 3d 1043, 1045-46, 350 N.E.2d 67, 69.

In *McNeil*, an attorney either failed to appear or sent an associate in his place on four or five occasions in the context of one case in which he was the attorney of record. On the last occasion, his associate was misdirected to the wrong courtroom. A petition for a rule to show cause was filed against the attorney and, after the hearing, he

was adjudged in contempt of court. The reviewing court reversed the finding of contempt, adopting the reasoning of *Pincham*. Although the trial court had complied with the procedural due process requirements of the fourteenth amendment, the reviewing court held that the attorney's conduct did not constitute even indirect contempt, as it was not wilful or calculated to hinder the court in its business.

In *McDonnell*, the appeal was from a judgment on a *petition for rule to show cause* against an attorney who failed to return to court during trial, thereby causing a mistrial by having absented himself from court without leave or explanation during the ongoing murder trial—during which he had been temporarily excused in order that he might take care of a civil motion pending in another court. The respondent-attorney was afforded the procedure in *McDonnell* which the respondent-minor was denied below.

■ All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of their judicial powers. (*People v. Loughran* (1954), 2 Ill. 2d 258, 118 N.E.2d 310.) As stated in *Javaras*, the procedural requirements for judicial punishment for criminal contempt of court depend upon whether the contempt is "direct" or "indirect":

> "Previous decisions of this court have recognized two types of direct criminal contempts—those which are *personally observed by the judge* and those which are not personally seen by the judge but take place in an integral *or* constituent part of the court and are thereby *deemed to have occurred in the constructive 'presence of the court.'* \*\*\* A direct criminal contempt \*\*\* which occurs in the constructive 'presence of the court' may call for the hearing of extrinsic evidence (*People v. Howarth* (1953), 415 Ill. 499; *People v. Harrison* (1949), 403 Ill. 320; *People v. Andalman* (1931), 346 Ill. 149), although, again, the proceeding may be essentially summary in nature. If, however, such evidence is necessary to establish the contempt, notice and hearing are required. \*\*\*
>
> Indirect criminal contempts are those in which the whole or an essential part of the contemptuous acts occur *out of the presence of the court; i.e.,* they are not personally observed by the judge or do not occur in an integral or constituent part of the court. In a proceeding to punish for indirect contempt, the alleged contemner must be informed of the charges against him by information, notice, citation, or rule to show cause, and he must be given an opportunity to file an answer thereto and re-

ceive a full hearing thereon \*\*\*, together with a jury trial, when demanded, in cases involving serious contempts.
\* \* \*

*The determination of what constitutes a contempt committed 'in the presence of the court' necessarily depends not only on the physical location but also on the nature of the act.* \*\*\* The case at bar involves facts which are more analogous to those in *People v. Pomeroy* (1950), 405 Ill. 175; *People v. Whitlow* (1934), 357 Ill. 34; and *People v. McDonald* (1924), 314 Ill. 548. Those cases dealt with assaults or disturbances in a court ante-room, a courtyard directly outside a courtroom, and a corridor fifty feet from the courtroom, respectively. In each case, it was held that the conduct did not occur in the presence of the court so as to justify summary direct contempt proceedings." (Emphasis added.) *(People v. Javaras* (1972), 51 Ill. 2d 296, 299-301, 281 N.E.2d 670, 672-73.)

The finding of direct contempt was, therefore, reversed.

■ Here, the conduct regarded by the trial court as contemptuous was the act of the minor in absenting herself from court without leave or explanation, in that she failed to reappear in the courtroom after a duly granted recess taken during a hearing on a report of violation of probation, an ongoing proceeding. This conduct, by its nature, amounts to a non-act. It is not similar to such affirmative acts as a defendant, bolting from a courtroom during an ongoing proceeding or blurting out remarks in the presence of the court. The term "criminal act" is defined as:

"External manifestation of one's will which is prerequisite to criminal responsibility. There can be no crime without some act, affirmative or negative. An omission or failure to act may constitute an act for purpose of criminal law." (Black's Law Dictionary 24 (5th ed. 1979).)

Although the failure to act may, in certain circumstances, result in legal consequences, an essential element of any contempt is the wilfulness of the conduct *(People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453; *People v. Patrick* (1980), 83 Ill. App. 3d 951, 404 N.E.2d 1042). It is not evident how the wilfulness of the minor's absence from the courtroom following a recess is a matter in the personal knowledge of the trial judge. Simply put, although the fact of her absence was before the court, the reasons therefor were not.

The petitioner points out that section 115—4.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—4.1) provides that, after arraignment, the court may commence and con-

tinue trial in a defendant's absence, whereas no similar provision is found in the Juvenile Court Act. We are aware of no authority, nor has any been cited to us, that would permit a minor in a juvenile proceeding to be tried *in absentia*. Nevertheless, and although the minor's absence halted the proceeding, we conclude that the reasoning of *Pincham* is likewise applicable here.

■ Any manner of things might befall an individual during a recess in court proceedings, and it is precisely the facts surrounding and causing that absence to which the court must direct its inquiry in contemplating the exercise of its contempt power, for those facts will dictate whether or not the requisite wilfulness arises from the circumstances of the absence. It defies both logic and the case authorities that the statute under which the proceeding is being conducted, here the Juvenile Court Act, rather than the facts surrounding the absence, should control the determination of the procedural requirements for judicial punishment of criminal contempt of court.

■ The minor's failure to appear before the court and explain her absence does not do away with the necessity of bringing forward extrinsic evidence, nor with the required observance of procedural formalities prior to an adjudication of guilt. We conclude that allegedly contemptuous "conduct" in the case at bar occurred outside "the presence of the court" and required the taking of testimony to culminate in a finding of guilty. Therefore, the contempt, if any, constituted indirect contempt, and direct criminal contempt proceedings were, therefore, improper.

In so holding, we do not pass on the question of whether the minor's conduct in this case was contemptuous, nor do we suggest that we will not approve sanctions imposed where appropriate. The circuit courts of Illinois cannot be held hostage to actions of juveniles who deliberately stop or prevent court proceedings under the Juvenile Court Act. However, in contemplating judicial punishment of juveniles for criminal contempt of court, the procedural requirements are the same as for all others before the court, and are simply a function of whether the contempt is "direct" or "indirect." As the procedural requirements for indirect criminal contempt were not complied with below, consistent with *Javaras*, the judgment of the circuit court of Macon County must be reversed.

Reversed.

GREEN, P.J., concurs.

JUSTICE MILLS, dissenting:

I cannot buy it.

The majority concludes that the juvenile's conduct occurred outside the presence of the court and therefore did not constitute direct criminal contempt.

But the punishment *was not* imposed for any conduct occurring outside the court's presence. The juvenile was before the court. A brief recess was called and the juvenile was required to return. She did not. This was the conduct for which she was punished and the court had personal knowledge of it. Whatever the juvenile did outside the presence of the court has absolutely no significance here.

The majority is concerned that the conduct was not wilful and posits "[a]ny manner of things might befall an individual during a recess in court proceedings." Yet the majority does not hypothesize as to what manner of thing befell this juvenile during the 10-minute recess which would have been unknown to both her mother and her counsel. A reasonable explanation for this conduct is not easily conceived.

Even more significant is the fact that neither the juvenile nor her counsel offered any explanation, reasonable or no, for the absence— even though the trial court provided counsel with an opportunity to argue against the contempt order.

Under the circumstances of this case, I would place the burden on the juvenile to give an account of herself. If some calamity had befallen her—as the majority fears—let her speak out!

There can hardly be a greater insult to a court, or challenge to its authority, than to simply walk out in the middle of proceedings without explanation when a party is required to be there. Even more so here, where the juvenile was before the court because she had repeatedly violated the court's probation order.

Such conduct requires stern measures. Yet the cautious treatment the majority would require of the trial court in dealing with such a juvenile casts the court more in the role of a doting guardian than a court of justice.

I dissent.