THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. USAVIOUS D. VADEN, Defendant-Appellant.

Third District   No. 3—01—0555

Opinion filed February 4, 2003.

894

Santiago A. Durango (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Edward D. Smith, State's Attorney, of Kankakee (John X. Breslin and Robert M. Hansen (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

Following a jury trial in the circuit court of Kankakee County, Usavious D. Vaden was convicted of unlawful delivery of a controlled substance within 1,000 feet of a church, a Class 1 felony. Defendant filed a motion for judgment not withstanding the verdict (judgment *n.o.v.*), which was denied. After the denial of defendant's motion for judgment *n.o.v.*, the defendant was sentenced to 5½ years. Defendant then filed a timely notice of appeal.

## FACTS

The State's witness, Kankakee police officer Scott Monferdini, testified that on May 23, 2000, he and his partner, Officer William Backus, were conducting a drug investigation with a confidential informant (hereinafter CI). During this investigation, Officer Monferdini set up video and audio equipment in a police car that CI drove during the investigation. Monferdini checked to make sure that the equipment was in proper working order. He put the videocassette recorder (VCR) inside a duffle bag, set it on the floorboard of the car and placed a cardboard box on top of it. He put a brand new tape in the VCR and placed the camera lens inside an air vent in CI's vehicle. Monferdini testified that he was familiar with the installation of this video equipment and that he had done it at least 100 times prior to installing it in CI's car.

Officer Monferdini also testified that he set up the audio equipment. He put the transmitter in CI's vehicle and the receiver in Officer Backus's vehicle. Monferdini testified that he had set up similar audio equipment approximately 100 times prior to May 23, 2000. He also testified that the audio equipment was working properly. Monferdini turned on the VCR and tape recorder and then went to his car and had CI under constant surveillance from approximately 40 to 50 feet away. During Monferdini's surveillance, he never saw anyone enter CI's car. Furthermore, he stated that he never observed CI bending down or over in the car, or making any gestures toward the video camera.

Officer Backus testified that he also followed CI and had him under surveillance from approximately 50 feet away. Backus stated that he never observed CI reaching under his seat or reaching for the videotape equipment. No one else entered CI's vehicle. During the surveillance, Officer Backus saw the defendant, Usavious D. Vaden, playing basketball at a church near the alley where the CI's car was parked. Officer Backus saw the defendant walk up to CI's car. Officer Backus testified that he saw the defendant converse with CI and then reach down into the window area, bring his hand up front and return

to the basketball game. The videotape shows the defendant putting his head in CI's car, having a conversation with CI, pulling something out of his mouth and handing it to CI. CI then drove away from the alley, and Officers Backus and Monferdini followed CI to a predetermined location. At that time, Officer Monferdini stopped the videotape and removed it from the VCR in the duffel bag in CI's car. Monferdini then put the videotape in an evidence bag and sealed it where it remained until trial. CI also handed Officer Monferdini five baggies of suspected crack cocaine.

Officers Backus and Monferdini each testified that the videotape accurately portrayed what they observed on May 23, 2000, the defendant walking up to CI's vehicle and having a conversation with CI and the defendant reaching into CI's vehicle.

Officer Backus had the receiver from the audio tape recorder in his car while he had CI under surveillance. Officer Backus stated that the conversation, which is on the audio tape that was admitted into evidence, was the conversation that he heard on May 23, 2000, as it was taking place between the defendant and CI.

## ANALYSIS

■ The issue that the defendant raises on appeal is that defendant's conviction should be reversed because he was identified through inadmissible hearsay evidence. The standard of review that applies in this case is abuse of discretion. Evidentiary rulings properly rest within the sound discretion of the trial court and, absent an abuse of discretion resulting in prejudice to the party objecting to those rulings, will not be disturbed on appeal. *Smith v. Black & Decker (U.S.), Inc.*, 272 Ill. App. 3d 451, 455, 650 N.E.2d 1108, 1112 (1995).

## OUT-OF-COURT IDENTIFICATION

■ Defendant first claims that his conviction should be reversed because he was identified as the drug seller in the present case through evidence of an out-of-court identification completed by CI, who was never present to testify at the trial. Defendant is correct that it is error to permit a police officer to testify that a person not produced as a witness in a case identified a defendant as the perpetrator of the offense. *People v. Smith*, 256 Ill. App. 3d 610, 615, 628 N.E.2d 1176, 1180 (1994). However, defendant created this error. The State did not elicit testimony regarding CI's out-of-court photo identification of the defendant shortly after May 23, 2000. It was on cross-examination of Officer Backus that the defendant elicited from him that CI identified the defendant's photograph in a photo lineup.

On appeal, defendant may not be heard on issues of error that he injected into his own trial. *People v. Cortes*, 181 Ill. 2d 249, 283, 692

N.E.2d 1129, 1144 (1998). The rationale for this rule is that it would be manifestly unfair for a person to obtain a second trial on the basis of error that he injected into the proceedings himself. *Ervin v. Sears, Roebuck & Co.*, 65 Ill. 2d 140, 144, 357 N.E.2d 500 (1976). Here, Backus identified the defendant, Vaden, through his own independent observations of the defendant on May 23, 2000. There was no mention of CI's identification of the defendant during a photo lineup until the defendant brought up the issue during cross-examination of Officer Backus. It was the defendant who elicited this information and who caused the error of the admission of this evidence. Therefore, defendant may not be heard on this issue.

Furthermore, in order to properly preserve an issue for appellate review, a party must both object at trial and raise the issue in a post-trial motion. *People v. Ward*, 154 Ill. 2d 272, 293, 609 N.E.2d 252, 260 (1992). *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30 (1988). In the present case, the defendant failed to object to the evidence regarding CI's identification of the defendant through a photo lineup. Defendant also failed to raise this issue in his motion for judgment *n.o.v.* There is an exception to this rule. Plain error may be invoked in criminal cases to review issues that were not properly preserved for review when the evidence was closely balanced or where the error was of such magnitude that the defendant was denied a fair trial. *People v. Ward*, 154 Ill. 2d at 294, 609 N.E.2d at 260. Here, the plain error rule does not apply because the defendant was not denied a fair trial. The State did not focus on the informant's lineup identification. The State focused on the identification of the defendant by Officer Backus and Officer Monferdini, as well as the videotape and audio tape, not the out-of-court identification of the defendant by the informant. The evidence was not closely balanced in this case. The defendant did not present any evidence on his behalf other than cross-examining the State's witnesses.

Since the defendant elicited the out-of-court identification, failed to object to it and failed to raise the issue in his posttrial motion, it has not been properly preserved for review. This is not a case where plain error was involved.

## ADMISSION OF TAPES

The second claim the defendant raises with regard to the admission of hearsay evidence is that the videotape and audio tape were improperly admitted into evidence because they were not properly authenticated. Defendant claims that the tapes were not authenticated by a witness with personal knowledge. Defendant's arguments fail for the reasons set forth below.

## VIDEOTAPE

■ Other courts have held that the "silent witness" theory may be used to authenticate videotapes when there is no testimony of a witness with personal knowledge of what the tape portrays. Under the "silent witness" theory, photographic evidence may be admitted without testimony of a witness if there is sufficient proof of the reliability of the process that produced the photograph or videotape.

In *Wagner v. State of Florida*, 707 So. 2d 827, 831 (Fla. App. 1988), the court held that the "silent witness" theory may be used to admit photographic evidence when the trial judge determines it to be reliable after considering the evidence establishing the time and date of the photographic evidence; any evidence of editing or tampering; the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product; the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product; and testimony identifying the relevant participants depicted in the photographic evidence. In *State v. Bunting*, 187 N.J. Super. 506, 455 A.2d 531 (1983), the court held that a film from a surveillance camera portraying the robbery of a store was properly authenticated where the state introduced testimony describing the installation and view of the camera, operation of the camera, testing of the camera, removal of the film and the chain of custody of the film after removal. In *Kindred v. State*, 524 N.E.2d 279, 298 (Ind. 1988), the court held that photographs taken by automatic cameras may be admitted into evidence through the "silent witness" theory when there is evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera.

We hereby expressly adopt the "silent witness" theory as a means for authenticating photographs or videotapes. We note that this method of authentication is virtually the same method used to authenticate audio tapes when there is no party to the conversation present to testify at trial as discussed below.

■ In the present case, the court finds that there was sufficient proof of the reliability of the process which produced the videotape for it to be admitted under the "silent witness" theory. Here Officer Monferdini testified that the video equipment was in proper working order and that he had set up video equipment in vehicles numerous times prior to May 23, 2000. There is further testimony that he and Officer Backus kept the informant under constant surveillance and never saw him or anyone else interfere with the video equipment. Officer Mon-

ferdini also testified that he removed the videotape from the tape recorder and put it in a sealed evidence bag where it remained until trial, and that the videotape had not been tampered with or altered. This evidence supports the trial court's determination that the tape was properly authenticated.

Absent the "silent witness" theory, sufficient foundation for the admission of a videotape is laid when a witness with personal knowledge of the filmed object testifies that the film is an accurate portrayal of what it purports to show. *People v. Smith*, 321 Ill. App. 3d 669, 675, 749 N.E.2d 986, 991 (2001). Here Officer Backus saw the defendant walk up to the informant's vehicle, lean his head into the vehicle, have a conversation with the informant and then walk away from the car, all of which is shown on the videotape. And as previously noted, Officer Backus testified that the videotape was an accurate portrayal of what he viewed on May 23, 2000. We find that there was proper foundation; the videotape was properly authenticated. The trial court's decision to admit the videotape was proper and not an abuse of discretion.

This videotape was properly authenticated twice, once by the testimony of the officers that it accurately depicted what they observed, and again under the "silent witness" theory. Defendant's claim that the videotape was not properly authenticated is without merit.

## AUDIO TAPE

A sufficient foundation for a sound recording when there is no party to the conversation to testify to the accuracy of the recording may be laid if there is evidence as to the capability of the device for recording; competency of the operator; proper operation of the device; preservation of the recording with no changes, additions or deletions; and identification of the speakers. *People v. Smith*, 321 Ill. App. 3d 699, 675, 749 N.E.2d 986, 991 (2001). *People ex rel. City of Leland Grove v. City of Springfield*, 193 Ill. App. 3d 1022, 1041, 550 N.E.2d 731 (1990).

Here, Officer Monferdini testified as to the capability of the tape recorder. He stated that he had installed this type of equipment at least 100 times prior to installing it in the informant's vehicle on May 23, 2000. Officer Monferdini stated that the tape recorder was operating properly and as soon as the conversation was over between the defendant and the informant, he followed the informant to another location, turned off the audio tape, removed it and put it in a sealed evidence bag. Officer Backus testified that the tape recorder accurately represented the conversation that he heard on May 23, 2000, as it was

taking place between the defendant and the informant. Therefore, there was sufficient evidence and foundation laid and this audio tape was properly authenticated. The trial court's decision to admit the audio tape was proper and not an abuse of discretion.

## CONCLUSION

The conviction of the defendant is hereby affirmed.

Affirmed.

BARRY and LYTTON, JJ., concur.