*In re* MARRIAGE OF DAVID L. SAMUEL, Petitioner-Appellee, and JEANNE SAMUEL, Respondent (Samuel J. Cahnman, Contemnor-Appellant).

Fourth District   No. 4—08—0708

Opinion filed September 16, 2009.—Rehearing denied October 26, 2009.

MYERSCOUGH, J., specially concurring in part and dissenting in part.

William F. Moran III (argued), of Stratton, Giganti, Stone, Moran & Radkey, of Springfield, for appellant.

No appearance for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Contemnor-appellant, attorney Samuel J. Cahnman, was found guilty of indirect criminal contempt during postjudgment dissolution

of marriage proceedings. For the following reasons, we affirm the trial court's judgment as modified.

## I. BACKGROUND

A judgment of dissolution of marriage between David and Jeanne Samuel set forth certain financial obligations of David Samuel. David, a physician, had moved to Louisiana and, after Hurricane Katrina, was suffering financially, which caused him to file a petition for relief from those obligations. His petition was not heard by the trial court.

In 2007, respondent, Jeanne Samuel, filed a motion to establish an arrearage in the payments due from David. No significant action had been taken on David's petition, and his then attorney had withdrawn from representation of him in 2006.

Jeanne's petition proceeded to hearing and was allowed on February 1, 2007. Thereafter, David, *pro se,* made several attempts to set for hearing his earlier motion for modification. On September 17, 2007, the parties and Jeanne's attorney appeared before Judge Gramlich, who made the following docket order:

> "Petitioner present in person; *pro se.* Respondent present in person and by Attorney Feldman. There is no pleading noticed up for hearing before this [c]ourt. It appears that the motion filed by the [p]etitioner on January 8, 2004[,] has either been abandoned or has been rendered moot by the judgment entered on February 7, 2007 [(the date the written order was signed)]. No pleading was filed objecting to the entry of the judgment. The [p]etitioner was admonished that he must obey the rules relating to pleadings and notice before this [c]ourt will consider any of his requests."

In July 2008, David retained contemnor-appellant, Samuel J. Cahnman, to represent him, and on July 11, 2008, a motion to vacate or modify nonfinal orders was filed. The gist of that motion was that David, *pro se,* had made numerous attempts to obtain settings on his petition for temporary relief but had not received any cooperation from Jeanne's attorney. Specifically, the motion alleged that a hearing had been scheduled for March 1, 2007, before Judge Gramlich and that this hearing had been unilaterally canceled by Jeanne's attorney. As proof of this allegation, Cahnman attached a copy of the March 1, 2007, page from Judge Gramlich's calendar book, showing a setting in "Samuel" that was crossed out. During the July 17, 2008, hearing on David's petition, Judge Gramlich took note of the exhibit attached to the petition and inquired of Cahnman how he came to be in possession of a copy of a page from the judge's schedule book. While this hearing was not reported, the substance of the discussion was laid of record in the contempt hearing that occurred on August 15, 2008. That hearing was initiated by the entry of the following order by Judge Gramlich on August 6, 2008:

"Attorney Sam J. Cahnman is directed to appear before this [c]ourt on August 15, 2008[,] at 8:50 a.m. to show cause why he should not be held in willful indirect civil contempt for his false response to this [c]ourt's question concerning how Attorney Cahnman came into possession of a page from Judge Gramlich's appointment book, which page was attached to a motion filed in the above case on July 11, 2008."

At the August 15, 2008, hearing, Judge Gramlich recited the basis for the issuance of the rule to show cause:

"THE COURT: When Mr. Cahnman appeared before me on behalf of his client, he had a motion which had appended to it a number of exhibits, and in going through the exhibits which were attached to the motion[,] I noticed that there was a page from my appointment book. I made an inquiry of Mr. Cahnman how he came into possession of that page from my appointment book, and he responded that he got it because he asked Shirley for it or something to this effect, [or] he asked Shirley for it and Shirley gave him the book.

I found that to be a bit unusual[,] so I didn't say anything more. I didn't question Mr. Cahnman about the veracity of his statement. I accepted it at face value. When I left the bench, I went to Shirley, who is the keeper of my appointment book, and I asked her if she permitted Mr. Cahnman to have access to my appointment book; and Shirley vehemently denied giving him permission and was extremely agitated at the thought that somebody would tell me that she gave them my appointment book."

Following the testimony of Cahnman and Shirley Vinson, the trial court proceeded to make its findings, during which the following interchange occurred:

"THE COURT: Well, I don't believe your client, Mr. Moran [(counsel hired by Cahnman)]. I think he lied to me in open court. I think he is lying to me now, and I'm disappointed that he would persist in this falsehood, I truly am. Do you have a suggestion to the [c]ourt as to what you believe an appropriate punishment for your client might be?

MR. MORAN: Your Honor, I would point out in the [r]ule to [s]how [c]ause[,] you said [w]ilfull [i]ndirect [c]ivil [c]ontempt, and I believe it's probably [w]ilfull [d]irect [c]riminal [c]ontempt."

The trial court found contemnor in indirect criminal contempt of court and imposed a $100 fine and the requirement that an acceptable apology be written to the court. This appeal followed.

## II. ANALYSIS

Contemnor-appellant's primary argument on appeal is that his due-process rights were violated because he was given notice of a

hearing on the charge of indirect civil contempt and the trial court found him to be in indirect criminal contempt. Obviously, due process requires that a respondent be given notice of what charge he is brought to court to answer before he is punished for indirect criminal contempt. *People v. Tomashevsky*, 48 Ill. 2d 559, 563, 273 N.E.2d 398, 401 (1971). Moreover, with a criminal contempt proceeding, certain admonitions not given here—such as the right to remain silent—are to be administered, and the burden of proof is not shifted to a respondent. See *Marcisz v. Marcisz*, 65 Ill. 2d 206, 209-10, 357 N.E.2d 477, 479 (1976); *People v. Goleash*, 311 Ill. App. 3d 949, 958, 726 N.E.2d 194, 200 (2000); *In re Marriage of Betts*, 200 Ill. App. 3d 26, 58, 558 N.E.2d 404, 425 (1990).

The difficulty with Cahnman's argument is evident from the passage of the transcript quoted above. Had Judge Gramlich maintained his decision to find Cahnman in indirect civil contempt, no issue could be raised as to the propriety of his show-cause order. It was at the suggestion of Cahnman's counsel that the proceeding was converted to one for indirect criminal contempt. The error was the product of the invitation.

A party who argues that the trial court erred by acceding to the party's own suggestion cannot be heard to complain of the invited error. See *Stephens v. Taylor*, 207 Ill. 2d 216, 222, 797 N.E.2d 679, 682 (2003); *Lapp v. Village of Winnetka*, 359 Ill. App. 3d 152, 163, 833 N.E.2d 983, 992 (2005); *People v. Vaden*, 336 Ill. App. 3d 893, 896-97, 784 N.E.2d 410, 413 (2003); *In re E.S.*, 324 Ill. App. 3d 661, 670, 756 N.E.2d 422, 430 (2001).

The circumstances which led to the contempt proceeding show elements of various types of contempt. In that the court sought to punish rather than coerce the contemnor, the appropriate type of contempt, as Moran pointed out, is criminal. See *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 822, 597 N.E.2d 847, 859 (1992). While the specific act committed by the contemnor was telling a falsehood to the trial court, an act occurring in open court and ordinarily constituting direct contempt, the proof of the falsehood required evidence not readily before the trial court, *i.e.*, the testimony of Vinson. Therefore, proceeding under a theory of indirect criminal or civil contempt was proper. See *In re L.A.S.*, 132 Ill. App. 3d 811, 815, 477 N.E.2d 727, 730 (1985); *People v. Townsend*, 183 Ill. App. 3d 268, 270, 538 N.E.2d 1297, 1299 (1989); *People v. Javaras*, 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672 (1972).

The other alleged errors also flow from the suggested conversion of a petition for indirect civil contempt to one for indirect criminal contempt. It is true, as the contemnor suggests, that in a proceeding for criminal contempt, the State's Attorney or some other counsel ap-

pointed by the court carries forward proof of the contempt. *Betts*, 200 Ill. App. 3d at 59, 558 N.E.2d at 425.

The contemnor further argues that the trial court suffered from a predisposition to find him guilty. For this proposition, the contemnor asserts that the trial court had personal knowledge of disputed evidentiary facts. See *People ex rel. City of Chicago v. Hollins*, 368 Ill. App. 3d 934, 947-48, 859 N.E.2d 253, 265 (2006). He also argues that the court failed to find him guilty of indirect criminal contempt beyond a reasonable doubt.

The seminal difference between criminal and civil contempt, whether direct or indirect, is the purpose of the remedy. If it is to punish, the contempt is criminal. If it is to coerce behavior, either to produce a desired action on the part of the contemnor or a modification of future conduct, it is civil. Here, there were two components to the trial court's order of contempt: the fine and the apology.

We find that the trial court's initial course of action is sustainable only if the fine, which is clearly a punishment for improper behavior, is eliminated from the evaluation of the proceeding below. An apology, which, of course, implies an admission of past conduct, is also easily construed as a promise not to engage in similar behavior in the future. To that extent, it is coercive and therefore is permissible as a sanction for indirect civil contempt.

The law of contempt is extraordinarily nuanced and arises in its application in circumstances of high emotion, such as here. Both the court and counsel must tread carefully to place the complained-of conduct in the correct denomination of contempt, because each type of contempt carries with it specific rules of procedure to avoid error. *Principles of Contempt*, written by the Honorable John P. Shonkwiler, is available to every judge in the State of Illinois and should be used to guide a trial judge in analyzing which category of contempt applies and what procedural rules obtain for that category.

### III. CONCLUSION

We vacate the imposition of the $100 fine entered against contemnor and modify the finding of contempt entered by the trial court to one of indirect civil contempt. In all other respects, the findings and order of the trial court are affirmed.

Affirmed as modified.

TURNER, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I specially concur in part and respectfully dissent in part. I agree the trial court should be affirmed. However, I would affirm in full. The court did not assess the $100 fine as a punishment but as reimbursement to the county for its operating costs. The docket entry from August 19, 2008, states, "The fine which by now should have been delivered to the Sangamon County General Fund, the same Sangamon County which supports the Juvenile Detention Center, will help defray the copious copy costs the county has suffered at the hands of the contemnor." For this reason, I would affirm in full.