(No. 33668.—)

IN RE THEODORE W. MILLER, Attorney, Respondent.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

Charles Leviton, of Chicago, *amicus curiae*.

Ode L. Rankin, of Chicago, for respondent.

Mr. Justice Maxwell delivered the opinion of the court:

This is a disciplinary proceeding instituted before the Committee on Grievances of the Chicago Bar Association as commissioners of this court under Rule 59, against the respondent, Theodore W. Miller, an attorney. The action was commenced on March 4, 1952, by a complaint consisting of 17 counts filed with the commissioners by the Committee on Unauthorized Practice of the Chicago Bar Association, hereinafter called the committee, charging respondent with violations of certain sections of the Canons of Ethics of the legal profession arising out of the operation of a business known as Mida's Trade Mark Services.

On April 22, 1952, respondent filed a motion to make the complaint more definite and certain, in response to which the committee filed a bill of particulars. Respondent filed his answer June 5, and an amendment thereto on December 17, 1952. The committee's proofs commenced on June 19, 1952. Six hearings were had in 1952 and ten in 1953, the last being held on December 17.

The commissioners' report and recommendations found that respondent had violated sections 22, 27, 28, 29, 33, 35 and 47 of the Canons of Ethics of the American, Illinois, and Chicago Bar Associations. The respondent's objections were overruled and the Committee on Grievances and the Board of Managers of the Chicago Bar Association recommended that respondent be suspended from the practice of

law for five years. By leave of court the respondent's objections stand as exceptions and the entire record is here for review.

The record shows that respondent's grade and high school education was in Schenectady, New York. At the age of sixteen he joined the Navy and was appointed to the United States Naval Academy, from which he graduated in 1922, receiving a commission in the regular Navy. In 1924 he resigned to accept a civil service appointment as assistant examiner in the United States Patent Office. He served in that capacity for about one year and while in Washington commenced the study of law at George Washington University. He then came to Chicago and continued to study law under attorneys, taking an annual examination by the Board of Law Examiners for two years, after which he was admitted to practice in Illinois in 1927. He was with several law firms following admission, and in 1929 respondent started to practice for himself and has been doing so ever since. In 1930 he served about one year as an Assistant State's Attorney of Cook County. Respondent has from time to time maintained offices at various locations in Chicago. In July, 1950, he took a lease at 209 South La Salle Street in Chicago where his offices are presently located.

No other complaint against respondent has ever been made before a bar association or this court. Respondent is registered in the United States Patent Office as competent to carry on proceedings in patent matters. No complaint is shown to have been made against respondent in either the Patent or Trade Mark offices.

The evidence is voluminous. The report of the Committee on Grievances as commissioners calls the record "the heterogeneous mass of evidence." Two hundred and forty-four exhibits were introduced consisting of 621 separate documents. The material facts are substantially as follows:

In 1889 William Mida, as editor of a trade journal,

commenced recording trade marks. In the course of years William Mida and his records became a source of information on trade mark matters. When the United States Patent Office began recording trade marks under the 1905 Trade Mark Law, Mida then had a backlog of twenty years of trade mark history. After the 1905 act, Mida kept and maintained a complete copy of the records of the trade mark registration in the patent office, systematized the records for ready reference; and upon request furnished an abstract of the records for established fees or charges.

Upon the death of William Mida in 1915 the business he had established and conducted as Mida's Trade Mark Services descended to his son, Lee W. Mida, who carried on until his death in 1949 when the business passed to Lucia G. Mida, his wife. It appears that the two Midas operated the trade mark services as a business in the city of Chicago from 1905 to 1949; and did so without any interference from the United States Patent Office or complaint from any bar association.

Both William Mida and Lee W. Mida, as laymen, were recognized by the patent office as competent persons to register trade marks. However, Mrs. Mida was not so recognized. She endeavored to conduct the business herself, and on March 1, 1950, Mrs. Mida engaged respondent to finish and conclude trade mark cases originally undertaken by Mida's Trade Mark Services then pending in the Trade Mark Office at Washington, D.C., and in the several States.

Respondent's initial association with Mida's Trade Mark Services began March 1, 1950. On that date an agreement was entered into between the respondent and Lucia G. Mida. The contract recited that Lucia G. Mida was the sole owner of Mida's Trade Mark Services; that she was not an attorney and did not desire to continue operation of the business; that there were a number of pending applications before the United States Patent Office and the several States for trade mark registrations which were filed by

Mida's Trade Mark Services; that Lucia G. Mida was "desirous of completing the work originally undertaken by the said Mida's Trade Mark Services and for which it is obligated, and also wishes to have Miller [respondent] complete the work necessary to process said applications provided the applicants consent that he do so;" and that "Miller is an attorney who is qualified to complete said applications and is willing to do so provided the applicants consent that he perform such services for them."

The agreement also sets forth that Lucia G. Mida agreed to deliver to respondent all the files, correspondence and other information related to such applications that were in possession of Mida's Trade Mark Service. Mida's customers had deposited with it moneys to pay costs and filing and registration fees. The contract between Lucia G. Mida and respondent recited that Mrs. Mida had paid to respondent the sum of $9,236.46, out of which respondent agreed to pay the sum of $4,673.41, which latter sum represented all unpaid filing and registration fees to the United States Patent Office.

Lists of the said pending applications which respondent had agreed to complete were attached to the contract as an exhibit. The contract also provided that in the event it was not possible for respondent to complete any of said applications "because the client does not consent to have Miller perform such services" any unpaid registration fees in such cases should be refunded to the applicant out of funds paid to respondent. Thereafter Lucia G. Mida contacted the several applicants and secured the required power of attorney for respondent, permitting him to go forward with the processing of the pending applications.

Meanwhile and contemporaneous with the entering of the contract with respondent, Lucia G. Mida, as lessor, and Corliss W. Jones, a layman, as lessee, entered into an agreement whereby, for a stipulated rental for a period of five years, Jones was given the right to use the name "Mida"

in connection with the trade mark business for the term of the lease, together with the Federal trade mark card index files, furniture, equipment and fixtures, digest library, books, records and correspondence files.

Thus, on March 1, 1950, Mida's Trade Mark services, as it had theretofore existed and functioned, was broken down into its two elements. The sale of the abstracts of its records based upon the search given the trade mark, the similar trade mark, the registration number, registration date, the registrant, the location, date of adoption and the goods covered was taken over as a business by Jones, a layman, while the completion of applications for registration of trade marks then left pending was taken over by respondent, a lawyer.

Respondent's activities after he entered into the contract with Mrs. Mida to complete the applications originally undertaken by Mida's Trade Mark Services consisted of applications, trade-mark oppositions, trade-mark interferences, proceedings and cancellation proceedings in the United States Patent Office. They involved the preparation and filing of briefs and appearance at the final hearing. In due time he completed the pending applications.

When respondent first entered into the contract with Lucia G. Mida, the office of Mida's Trade Mark Services was located at 537 South Dearborn Street in the city of Chicago. The record is not entirely clear as to when respondent moved to this address. Suffice to say, however, that both Mida's Trade Mark Services and respondent had the same Dearborn Street address for some months prior to July, 1950.

In July, 1950, respondent removed to his present offices at 209 South La Salle Street. At the same time, Mida's Trade Mark Services moved to the same address. There is a double door to the offices. One door carries respondent's name as attorney and the other the name of "Mida's Trade Mark Services." Corliss W. Jones operated Mida's

Trade Mark Services under his lease with Mrs. Mida until February 28, 1951, when he assigned the lease, with the consent of Mrs. Mida, to respondent who assumed the obligations of said lease as of that date. Jones then left Illinois and went into business in Indiana. From March 1, 1951, respondent has conducted the abstract business of Mida's Trade Mark Services, first under the lease and subsequently, upon the death of Mrs. Mida, as sole owner of said business.

The several paragraphs of the complaint made by the committee are phrased in general terms but the context of the pleading is to charge that respondent solicited law business on a large scale, using the trade name of "Mida's Trade Mark Services," improperly used the description of "general counsel," had solicitors actively soliciting business for him, and wrote to laymen, prospective clients, suggesting the filing of opposition proceedings in the United States Patent Office. The complaint of the Bar Association is not that respondent is practicing law but that under a guise of a trade mark search service he is actively soliciting and has obtained numerous clients for legal work. The exhibits attached to the complaint are lettered so as to refer to and support the same lettered paragraphs in the complaint. The exhibit of paragraph (a) is exhibit A and each paragraph and exhibit is so known.

The answer of respondent is that in the operation of the business known as Mida's Trade Mark Services he only received clients who gravitated to him because of his ownership of such business; and that such indirect accumulation of clients is not an exploitation of a business nor solicitation within the meaning of the Canons of Ethics, but only the normal acceleration of a lawyer's practice.

The defense of respondent is that a lawyer may own and operate a business alongside of his law practice, if he does not exploit the business with a motive to convert it into a medium of solicitation, thereby to manufacture clients

for his law practice; that the operation of a reputable business by an active lawyer does not and cannot degrade the legal profession nor bring it into disrepute; that the province of this court is to control the conduct of the lawyer, not his business.

Respondent and the committee have raised several points, exceptions and objections in their respective briefs, some of which are not properly before this court and others not necessary to a decision in this case.

The charge in the complaint of the committee is, in substance, solicitation and exploitation of a business, those allegations are denied by the respondent, and that is the issue.

Hearings in disbarment proceedings are judicial and must be governed by the same rules as to competency and weight of evidence as are applied to other cases on questions of fact (*In re Mitgang*, 385 Ill. 311; *In re Needham*, 364 Ill. 65; *People ex rel. Chicago Bar Association* v. *Amos*, 246 Ill. 299.) In order to warrant disbarment or suspension, the case must be put to hearing on a definite theory. That theory the pleadings must outline, the evidence sustain, and the law support. The record must be free from doubt not only as to the act charged but also as to the motive with which it is done. *In re Brumund*, 381 Ill. 139; *In re Greenberg*, 380 Ill. 417; *In re Hallmann*, 384 Ill. 325.

As a matter of convenience in considering the evidence, the activities of the respondent can well be divided into two periods: the first, under his contract with Lucia G. Mida, from March 1, 1950, to February 28, 1951; the second, after his purchase of Mida's Trade Mark Services from Jones on March 1, 1951.

The record is lacking of any substantial evidence of violation by respondent of Canons of Ethics prior to March 1, 1951. However, after respondent had purchased the

trade name and good will from Lucia G. Mida he entered
upon a course of conduct wholly inconsistent with the
Canons of Ethics. In one instance he ordered 250 form
letters, of which at least twenty were sent to customers on
the letterhead of Mida's Trade Mark Services, Chicago, and
signed by M. E. Ryan, a part of which reads as follows:

"* * * As for our qualifications for such work, we wish to
advise that all matters for our clients requiring a lawyer are
handled by our general counsel, Theodore W. Miller, with the
client's approval. Mr. Miller is a member of the bar, a former
member of the Examining Corps of the U. S. Patent Office, and
a patent and trade-mark lawyer of vast experience and fully quali-
fied in trade-mark and patent matters both before the Patent Office
and the Courts."

Such letters mentioning respondent's qualifications to
handle work for Mida's clients were sent out from time
to time, and one of the letters sent to clients appears as an
exhibit attached to the complaint. This is a letter on the
letterhead of Mida's Trade Mark Services, dated August
27, 1951, addressed to Millwork Supplies, Inc., Northfield,
Illinois, and reads as follows:

"Thank you for your letter of August 16th inquiring as to the
necessary requirements for application for registration in the
United States Patent Office.
"The preparation, filing and prosecution of application for regis-
tration of trade marks requires the attention of specially qualified
counsel, and we suggest Theodore W. Miller, of this address, a
registered patent attorney, and our general counsel, who is thor-
oughly familiar with and of long experience in these matters.
Quotation from him for preparing and filing the application for
registration of your trade mark 'Chef's Block' is $95.00, which
includes the government filing fee, draftsman's charges for the
patent office drawing and the ordinary and usual amendments and
arguments in the course of the prosecution of said application.
"If you desire to have Mr. Miller handle your application for
registration of the above-mentioned trade mark, kindly furnish
details on the enclosed questionnaire. Seven specimens showing
actual use of the mark on the goods are required."

On June 22, 1951, the following letter on the letterhead
of respondent, signed by him, was addressed to Ace En-

graving & Embossing Company of Chicago, reading as follows:

"As a client of Mida's Trade Mark Services, Chicago, you have been receiving advisory services as to pending applications to register trade marks similar to yours, and as I handle all legal matters for Mida's clients, I am directly informing you of an application pending in the United States Patent Office to register the mark 'Ace'.

"The application was filed by Anthony G. Rosa, Lyndhurst, New Jersey for the trade mark 'Ace' for fountain pens and pencils, claiming the use since January, 1950.

"According to the records of Mida's Trade Mark Services you own registration No. 264,508, dated November 26, 1929 for the notation "Ace Engraving & Embossing Co." and Airoplane design, for engraved stationery—namely, business cards, calling cards, wedding invitations and announcements, Christmas, New Year and birthday greeting cards and business announcements of all kinds, adopted September 1923.

"If you are still using that trade mark and should you consider the above trade-mark 'Ace' to be an invasion of your brand claims, your formal objection thereto must be filed in the patent office by Thursday, July 12, 1951.

"In view of the close proximity of the time limit for filing your formal objections to the registration of the above trade mark, if you desire to have me institute such proceedings in your behalf, I should have your instructions at an early date."

Similar letters were sent by respondent, one dated August 17, 1951, addressed to Bell Company, Incorporated, of Chicago, and one dated August 17, 1951, and addressed to Steele-Wedeles Company of Chicago.

To cite further examples or to quote testimony from the record would be to unduly lengthen this opinion without resultant benefit. We think that respondent's actions were something more than "excusable conduct, necessarily resulting from individual interpretation of Canons, over-zealousness, individuality, poor judgment, bad taste" as he describes them.

It was not necessarily improper for respondent to engage in the business of trade mark search service, furnishing search reports to customers consisting solely of factual data as to the use and registration of particular trade marks

and informing customers of the use and registration of particular trade marks as indicated by public records and private informative directories; to conduct and maintain a service for the purpose of informing customers of the use and registration of names or marks similar to those of a customer. A business so conducted is not inconsistent with respondent's duties as a member of the bar.

The inconsistency arises in the instant case when respondent, as lessee and as sole owner in conducting the trade mark search service in the name of Mida's Trade Mark Services passed upon the legal status of the search report, offered legal interpretation thereof, gave opinions upon the legal status or offered legal interpretation of similar names or marks and charged a fee for such services. The record does not support the argument of respondent that he has been practicing law within the limits of the Canons of Ethics, that Mida's Trade Mark Services was not engaged in the practice of law and the practice of law which respondent, as Theodore W. Miller, was engaged in was something entirely different, distinct and apart from the activities of Theodore W. Miller doing business as Mida's Trade Mark Services. On the contrary, the evidence is clear, cogent and convincing that Mida's Trade Mark Services, as conducted by respondent, was engaged in a business of a nature, which, if handled by a lawyer, would be regarded as the practice of law. From time to time Mida's Trade Mark Services suggested respondent to customers as an attorney well qualified in trade mark matters. In instances, respondent suggested himself to customers of Mida's Trade Mark Services as such an attorney. Thus it will be readily seen that Mida's Trade Mark Services, as carried on by respondent, lent itself as a means of procuring professional employment for him.

We have many times recognized that the disbarment of an attorney is the destruction of his professional life, his character and his livelihood. Likewise, the removal of an

attorney from practice for a period of years entails the complete loss of clientele with its consequent uphill road of patient waiting to again establish himself in the eyes of the public, the courts and his fellow lawyers. However, the courts should not hesitate to inflict the penalty where the punishment is fully deserved. (*In re Donoghy,* 402 Ill. 120.) Some infractions of the Criminal Code are more serious than others and call for a much higher grade of punishment, and so it is with infractions of the Canons of Ethics. The offense of solicitation of business is not one which imports venality, criminality, fraudulent practices or moral turpitude. (*People ex rel. Chicago Bar Association* v. *McCallum,* 341 Ill. 578; *In re Veach,* 1 Ill. 2d 264.) Nevertheless its practice is inimical to the good reputation of the bar in general, is strictly prohibited and studiously to be avoided.

In view of the fact that we do not find respondent's conduct was "tainted with moral turpitude," as did the commissioners, and in view of the short period of time in which he engaged in the activities complained of, his age, long practice and hitherto unchallenged standing, we fix the period of his suspension from the practice of law at one year.

*Respondent suspended.*