# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Newton*, 2011 IL App (1st) 090683

---

| | |
|---|---|
| Appellate Court Caption | *In re* THE MARRIAGE OF DAVID NEWTON, Petitioner-Appellee, and HADLEY NEWTON, Respondent (David J. Grund, Marvin J. Leavitt, and Grund & Leavitt, P.C., Contemnors-Appellants). |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-09-0683, 1-09-0684, 1-09-0685 cons. |
| Filed | June 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a marriage dissolution action where contemnor attorneys were disqualified from representing respondent pursuant to Rule 1.9 of the Illinois Rules of Professional Conduct based on their prior representation of petitioner and their retainer agreement was unenforceable under section 508(c)(3) of the Illinois Marriage and Dissolution of Marriage Act, the trial court did not err in denying the attorneys any attorney fees and the finding of contempt was upheld on the ground that they had no good-faith basis to test the trial court's order. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-D-5136; the Hon. Edward R. Jordan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Marvin J. Leavitt and David C. Adams, both of Grund & Leavitt, P.C., of Chicago, for appellants. |
| | |
| | Michael J. Berger, Leon I. Finkel, and Rebecca S. Berlin, all of Berger Schatz, of Chicago, for appellee. |
| | |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Justices Salone and Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1     Contemnors-appellants, David Grund, Marvin Leavitt, and Grund & Leavitt, P.C. (collectively Grund and Leavitt), appeal the court's entry of a contempt order against them based on their refusal to comply with the court's order to step aside following an earlier court order that disqualified Grund and Leavitt due to a conflict of interest and denied their petition for attorney fees seeking $250,000 in interim and prospective fees in the divorce of David Newton (David) and Hadley Newton (Hadley).

¶ 2     After a full hearing on David's motion to disqualify, the circuit court determined that there was a conflict of interest in violation of Rule 1.9 of the Illinois Rules of Professional Conduct (Ill. Rs. of Prof'l Conduct, R. 1.9 (eff. Aug. 1, 1990)), and that Grund and the firm of Grund & Leavitt were disqualified from representing Hadley. At a hearing on the petition for fees, the court determined Grund and Leavitt were not entitled to any fees based on their disqualification due to the conflict of interest. Grund and Leavitt refused to comply with the court's order denying them fees and ordering them to step away from the bench, and the court found them in contempt and ordered Grund to pay $100 to purge the contempt. Grund and Leavitt appeal only the contempt order.

¶ 3     The issue before us is discrete and limited: did the court err in entering the contempt order? We clarify from the outset that Grund and Leavitt appeal only the contempt order and seek corollary review of the underlying denial of their fee petition because of the disqualification order, not their disqualification. A contempt order is final and appealable and generally also brings the propriety of the underlying disqualification order and subsequent denial of attorney fees before us. See *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 986 (1993).

¶ 4     We find that the circuit court did not err in finding Grund and Leavitt in contempt based on their unwillingness to step aside, thus continuing their unwillingness to comply with Grund's disqualification due to a conflict of interest and the resulting denial of attorney fees. Grund and Leavitt violated Rule 1.9, and under section 508(c)(3) of the Illinois Marriage and Dissolution of Marriage Act (the Act), the retainer agreement with Hadley was not enforceable because it was in violation of a court rule. 750 ILCS 5/508(c)(3) (West 2008).

Further, as the court correctly noted, even without section 508, ordinary contract law requires fees only for valid contracts and here the contract with Hadley was void *ab initio* because Grund was not allowed by Rule 1.9 to enter into it.

¶ 5                                   JURISDICTION

¶ 6        At the time of the instant appeal, March 18, 2009, the underlying divorce proceedings were still pending and judgment was not entered until nearly a year later, on March 8, 2010. Disqualification orders are not immediately appealable (*In re Estate of French*, 166 Ill. 2d 95, 100 (1995)), but Grund and Leavitt here are not appealing the disqualification order. Following the disqualification order the court denied attorney fees going back in time to the first meeting with Hadley. Grund and Leavitt are not directly appealing the denial of attorney fees. Grund and Leavitt argue that they are entitled to fees up to the time of their disqualification. The court disagreed and denied all fees. Grund and Leavitt are appealing the contempt order and fine of $100 imposed by the court for not stepping aside, thereby disregarding the disqualification order and challenging the court's denial of all fees from either David or Hadley.

¶ 7        Contempt judgments that impose a penalty are final, appealable orders. *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008). See also Ill. S. Ct. R. 304(b)(5) (eff. Jan. 1, 2006).

¶ 8         " ' "Where an unappealable interlocutory order results in a judgment of contempt including a fine or imprisonment, such a judgment is a final and appealable judgment and presents to the court for review the propriety of the order of the court claimed to have been violated." ' " *Index Futures Group, Inc. v. Street*, 163 Ill. App. 3d 654, 657 (1987) (quoting *People v. Verdone*, 107 Ill. 2d 25, 30 (1985), quoting *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 174 (1981)). Here, the court imposed a fine of $100, and therefore the contempt was a final judgment which was immediately appealable.

¶ 9                              STANDARD OF REVIEW

¶ 10       The parties dispute the standard of review. Grund and Leavitt assert the issue must be reviewed *de novo*, as it presents a question of law, while David maintains that the proper standard of review is abuse of discretion. When the facts of a contempt finding are not in dispute, their legal effect may be a question of law, which we review *de novo*. *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 217 (1999). See also *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 1054 (1983) (this court conducts an independent review of questions of law presented by the disqualification order). "As a general rule, a trial court's decision to award fees is a matter of discretion and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 656 (2007) (citing *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005)). Here, however, the circuit court indicated its belief that it could not award attorney fees once Grund and Leavitt were disqualified. Meanwhile, Grund and Leavitt argue that, although they were disqualified, they are still entitled to their fees accrued for work performed for Hadley under section 508 of the Act before the disqualification and assert that nothing in the ethical rules explicitly states that no fees are allowed if an attorney is disqualified. The legal question is

thus whether the circuit court properly denied attorney fees from the beginning of Grund's representation of Hadley. Whether a court or administrative agency has the *authority* to award attorney fees is a question of law that we review *de novo*. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007) (citing *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547 (2005)). "Furthermore, whether a party may recover attorney fees and costs pursuant to any specific act is a question of law." *Grate*, 373 Ill. App. 3d at 231 (citing *Johnson v. Thomas*, 342 Ill. App. 3d 382 (2003)). Thus, since the facts of the contempt are not in dispute and since Grund and Leavitt are not appealing the disqualification, we are presented with a question of law and we review this issue *de novo*.

¶ 11                                    BACKGROUND

¶ 12        Petitioner, David Newton, and respondent, Hadley Newton, were divorced pursuant to a judgment for dissolution of marriage entered on March 8, 2010. In the underlying divorce proceedings, David filed an emergency motion to disqualify Hadley's attorney, Grund, and the law firm of Grund & Leavitt, pursuant to Rule 1.9 (Ill. S. Ct. Rs. of Prof. Conduct, R. 1.9 (eff. Aug. 1, 1990)), due to Grund's former representation of David in the same proceeding. On August 9, 2007, the circuit court entered a preliminary injunction order prohibiting Grund and Leavitt from representing Hadley while the motion to disqualify was pending. Hadley filed her response to the motion to disqualify on July 27, 2007. A hearing was held on September 4, 2007. The court heard testimony by David, Grund, and Hadley. However, upon questioning of Grund regarding his conversation with David, David's counsel objected based on attorney-client privilege. Although there was an offer of proof, the circuit court barred Grund's testimony on the basis of the attorney-client privilege. David testified that he met alone with Grund in Grund's office for between 1 1/2 and 2 hours. They discussed information and issues related to his marriage and impending divorce from Hadley, including issues regarding the children and his financial situation, and Grund took notes.

¶ 13        Hadley testified, upon questioning by Grund, that she learned that there was a conflict with Grund representing her because Grund himself told her there was a conflict when she came in to see him. However, he entered into a retainer agreement with her and represented her. The court found that Grund and Leavitt were disqualified from representing Hadley.

¶ 14        On September 18, 2007, Hadley sought interlocutory review of the court's order and filed a petition for leave to appeal (first appeal) under Supreme Court Rule 306 (Ill. S. Ct. R. 306 (eff. Sept. 1, 2006)). On October 17, 2007, we granted leave to appeal, thus staying proceedings below. On June 13, 2008, we rendered our decision pursuant to Illinois Supreme Court Rule 23 (Ill. S. Ct. R. 23 (eff. May 30, 2008)), in which we held that the circuit court erred in barring Grund's testimony at the hearing on the motion to disqualify. *In re Marriage of Newton*, No. 1-07-2590 (2008) (unpublished order under Supreme Court Rule 23). We reversed and remanded for a full and fair hearing including Grund's testimony to resolve the question of whether there was an attorney-client relationship between David and Grund. *In re Marriage of Newton*, No. 1-07-2590 (2008) (unpublished order under Supreme Court Rule 23).

¶ 15        David filed a petition for rehearing. On July 15, 2008, we entered an order denying the

petition for rehearing and further ordered that Arthur Berman, who had joined Grund & Leavitt, was allowed to represent Hadley while the disqualification motion was pending. On November 26, 2008, the Illinois Supreme Court denied David's petition for leave to appeal, and on January 8, 2009, we returned the mandate to the circuit court. David also filed a motion seeking review of a certified question (second appeal) on July 16, 2008, pursuant to Illinois Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)). However, we dismissed that appeal.

¶ 16  On January 22, 2009, Grund and Leavitt filed a petition for attorney fees on behalf of Hadley pursuant to sections 501 and 508 of the Act (750 ILCS 5/501, 508 (West 2008)), seeking prospective and interim fees and costs from David in the amount of $250,000, including amounts incurred during both appeals. The court conducted a hearing as directed on February 25, 2009, and Grund testified that he told David that representation would not begin until David actually signed a contract, that no attorney-client privilege would attach during their meeting, and that David should not disclose anything to Grund that could not appear in answers to interrogatories or in the public record. Grund testified that David "volunteered some information," but Grund did not recall anything specifically. Grund denied taking any notes. Grund believed David never intended to actually hire him. Grund also denied giving David a business card with his private cellular telephone number, but was impeached by the production by David of Grund's business card with his cellular telephone number written on the back of the card. In rebuttal, David testified that Grund assured him everything they discussed was confidential.

¶ 17  On March 3, 2009, the circuit court entered its memorandum opinion and order finding that there was an attorney-client relationship between David and Grund and disqualifying Grund and Leavitt from representing Hadley. The court specifically found that, "[c]learly, from Mr. Grund's own interrogation of Hadley it is obvious that he believed there to be a conflict and that he so informed Hadley, yet he knowingly entered into a retainer agreement with her."

¶ 18  The court also specifically found that "Mr. Grund's credibility *** was diminished by his impeachment and general demeanor. His attitude on the stand was sarcastic, evasive, cavalier and argumentative ***."

¶ 19  On March 10, 2009, the matter was before the court on Grund and Leavitt's fee petition. Since Grund and Leavitt were disqualified, the parties and the court discussed whether the petition should be treated as a section 501, 508 or 503(j) petition, but ultimately the court concluded that it could not award attorney fees in any event because of counsel's disqualification. Grund and Leavitt argued strenuously for fees under section 508, and the court offered to find them in contempt so that they could immediately appeal. The court asked counsel to step away from the bench, but counsel did not do so, and the court found them in contempt. In its order, the court stated:

> "The court informed Grund and Leavitt that it would not and could not hold a hearing with regard to the fees they incurred by virtue of their representation of Hadley Newton and would deny their fee petition. The court also ordered Grund and Leavitt to step away from the bench. They refused to do so and therefore it is ordered as

follows:

"1. The Grund & Leavitt fee petition is denied.

2. Mr. Grund and Mr. Leavitt are found to be in direct contempt of this court for their failure to obey the court's disqualification order.

3. Grund & Leavitt shall pay a fine of $100 to purge said contempt."

¶ 20     Thereafter, Grund and Leavitt appealed both the disqualification order and the contempt order. On June 2, 2009, we entered an order granting David's motion to dismiss the appeal of the disqualification order, but denied his motion to dismiss the appeal of the contempt order.

¶ 21                                          ANALYSIS

¶ 22     David asserts that the appeal is moot since the judgment for dissolution of marriage has been entered. However, there is no authority for David's proposition that pending attorney fee petitions are rendered moot by the entry of judgment of dissolution. Rather, as section 508(c)(2) provides, awarding fees under a petition is a distinct cause of action from a proceeding for dissolution of marriage. We therefore proceed to address the issues presented in the instant appeal.

¶ 23     We now address David's argument that Grund and Leavitt's appeal should be dismissed because they lack standing. According to David, once Grund and Leavitt were disqualified, they had no standing to seek attorney fees incurred on behalf of Hadley because their petition was brought under section 501 of the Act, and section 501 makes provision only for the petitioning party's current counsel, and not former counsel (750 ILCS 5/501(c-1) (West 2008)).

¶ 24     However, Hadley's petition for an award of attorney fees from David was brought pursuant to both section 501 and section 508 of the Act, and not only section 501. At the hearing on the petition counsel and the court discussed whether section 501 or section 508 of the Act applied. The court did not feel it would be "appropriate" to treat the fee petition as brought under section 508, and it wanted instead to treat the petition as brought under section 503(j) at the end of the dissolution proceeding. The court found that Grund and Leavitt were not entitled to any fees in any event because of their disqualification and denied the fee petition. Grund and Leavitt argued before the court, and argue now on appeal before us, that they are entitled to fees under section 508.

¶ 25     We clarify that although the parties, including Grund and Leavitt, assert that Hadley's petition filed January 22, 2009, sought fees from David only pursuant to section 501, the record shows the petition sought fees pursuant to section 508 as well. Section 508(a) of the Act provides the following as to counsel's right to collect fees under the Act:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501 [750 ILCS 5/501] and

-6-

in any other proceeding under this subsection." 750 ILCS 5/508(a) (West 2010).

¶ 26    Here, the petition for attorney fees was filed on January 22, 2009, during the pendency of the dissolution proceedings, and was still pending at the time the judgment for dissolution was entered. Thus, Grund and Leavitt have standing to seek fees under section 508.

¶ 27    Grund and Leavitt also have standing because they are appealing the contempt order. A contempt order is final and appealable and generally also brings the propriety of the underlying disqualification order and denial of attorney fees before us. Directly on point is *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979 (1993), where the defendant and contemnor appealed a finding of civil contempt, including a $100 fine, imposed for contemnor's failure to obey the trial court's disqualification order. *SK Handtool Corp.*, 246 Ill. App. 3d at 985. Counsel for both sides of the litigation in *SK Handtool* indicated that, after this court denied leave to appeal and a petition for leave to appeal to the supreme court was denied, the only avenue to seek review of the disqualification order was to find counsel for Dresser in contempt of that order, and so the court found counsel in direct contempt for failing to comply with the order. *SK Handtool Corp.*, 246 Ill. App. 3d at 985. We held that we had jurisdiction of the contempt finding, which brought the underlying disqualification order before the court. *SK Handtool Corp.*, 246 Ill. App. 3d at 986 (citing *Index Futures Group, Inc. v. Street*, 163 Ill. App. 3d 654, 657 (1987)). Here, similarly, a contempt order was entered against Grund and Leavitt, finding them in contempt for failing to step away from the bench after they refused to comply with the disqualification order and denial of fees, and thus they have standing to appeal and we have jurisdiction. Grund and Leavitt's disqualification did not strip them of standing or divest this court of jurisdiction to review the contempt order and underlying disqualification and resulting denial.

¶ 28    Although Grund does not appeal the disqualification order, it is necessary to review it to determine if the denial of fees was proper, which led to the finding of contempt.

¶ 29                                    DISQUALIFICATION

¶ 30    The trial court's denial of Grund and Leavitt's fees was founded on the trial court's determination that they were disqualified due to a conflict of interest with Grund's prior representation of David. Rule 1.9(a) of the Illinois Rules of Professional Conduct (Ill. Rs. of Prof'l Conduct, R. 1.9(a) (eff. Aug. 1, 1990)) provides:

"Rule 1.9. Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or

(2) use information relating to the representation to the disadvantage of the former client, unless:

(A) such use is permitted by Rule 1.6; or

(B) the information has become generally known." Ill. Rs. of Prof'l

-7-

Conduct, R. 1.9 (eff. Aug. 1, 1990).

¶ 31 We find the circuit court's determination correct. Grund and Leavitt's representation of Hadley violated Rule of Professional Conduct 1.9. The testimony at the hearing below established that David sought legal advice from Grund and that Grund discussed David's marriage and divorce with him during his consultation. "An attorney/client relationship can be created at the initial interview between the prospective client and the attorney, and it is possible that confidential information passed during the interview sufficient to disqualify the attorney from representing the opposing party in related litigation." *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 440 (1993) (citing *Herbes v. Graham*, 180 Ill. App. 3d 692 (1989)). "[T]he relationship can come into being during the initial contact between the layperson and the professional and appears to hinge on ' "the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." ' " *Herbes*, 180 Ill. App. 3d at 699 (quoting *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978), quoting Edward W. Cleary, McCormick on Evidence § 88, at 179 (2d ed. 1972)). The testimony at the hearing below established that David consulted with Grund and sought legal advice regarding his divorce. We agree with the circuit court's determination that David's consultation with Grund gave rise to an attorney-client relationship.

¶ 32 Furthermore, since David and Hadley were parties in the identical case, there was clearly a substantial relationship between Grund's representation of David and Grund's representation of Hadley regarding their divorce. " 'Once a substantial relationship is found between the prior and present representations, it is irrebuttably presumed that confidential information was disclosed in the earlier representation.' " *Franzoni v. Hart Schaffner & Marx*, 312 Ill. App. 3d 394, 403-04 (2000) (quoting *Herbes*, 180 Ill. App. 3d at 700). See also *SK Handtool Corp.*, 246 Ill. App. 3d at 990 ("If such a relationship exists, it is presumed that the client disclosed confidential information to the attorney during the prior representation." (citing *Skokie Gold Standard Liquors, Inc.*, 116 Ill. App. 3d at 1055, and *Novo Therapeutisk Laboratorium v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 196 (7th Cir. 1979) (*en banc*))). Thus, there is an irrebuttable presumption that confidential information was disclosed during Grund's consultation with David. Thereafter, Grund was prohibited by Rule 1.9 from representing Hadley. The circuit court did not err in (1) finding that Grund had not rebutted the presumption; (2) in finding that Grund and Leavitt were disqualified; and (3) in entering the disqualification order.

¶ 33                                    DENIAL OF FEES
¶ 34                               A. Under Section 508 of the Act
¶ 35 We next determine whether the court below was correct in its determination that Grund and Leavitt's disqualification barred them from recovering attorney fees. Section 508(a) of the Act provides:

> "The court *** may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in

accordance with subsection (c-1) of Section 501 [750 ILCS 5/501] and in any other proceeding under this subsection." 750 ILCS 5/508(a) (West 2010).

¶ 36    Section 508(a) further provides, in relevant part:

"Awards may be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).

(4) The maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure [735 ILCS 5/2-1401] seeking relief from a final order or judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act." 750 ILCS 5/508(a) (West 2008).

In their petition on behalf of Hadley, Grund and Leavitt sought fees from David under section 508 largely for their work performed on their prosecution of Hadley's appeal and defense of David's appeal under subsections (a)(3) and (a)(3.1). See 750 ILCS 5/508(a)(3), (a)(3.1) (West 2008). Grund and Leavitt argue there is no limitation to their right to seek fees under section 508. However, although Grund and Leavitt perceive no limitation to an award of attorney fees under section 508 which could be based on their disqualification due to a conflict of interest, section 508(c)(3) applies to Grund and Leavitt's petition for fees, as it seeks fees for services under sections 508(a)(1) through (a)(5).[1] The conditions stated in section 508(c)(3) apply to both petitions for final hearings for attorney fees and costs against an attorney's own client under section 508(c)(3), as well as to an independent proceeding for services within the scope of subdivisions (1) through (5) of section 508(a). 750 ILCS 5/508(c)(3) (West 2008). Section 508(c)(3) specifically conditions the enforceability of a fee agreement on meeting applicable court rules:

"(3) The determination of reasonable attorney's fees and costs either under this subsection (c), whether initiated by a counsel or a client, or in an independent proceeding for services within the scope of subdivisions (1) through (5) of subsection (a), is within the sound discretion of the trial court. The court shall first consider the written engagement agreement and, if the court finds that the former client and the filing counsel, pursuant to their written engagement agreement, *entered into a contract which meets applicable requirements of court rules* and addresses all material terms, then the contract shall be enforceable in accordance with its terms, subject to the further requirements of this subdivision (c)(3)." (Emphasis added.) 750

---

[1]Grund and Leavitt's claim for prospective fees was initially part of their petition, but is irrelevant now on appeal due to their disqualification.

ILCS 5/508(c)(3) (West 2008).

Here, Grund and Leavitt's contract with Hadley did not meet the applicable requirements of our court rules, as it violated Rule 1.9, and therefore the contract was unenforceable under section 508 of the Act.

¶ 37       B. Grund and Leavitt's Contract With Hadley Was Void *Ab Initio*

¶ 38       A second, broader, basis supporting the circuit court's denial of attorney fees is the fact that Grund and Leavitt's fee agreement with Hadley is void for violation of Rule of Professional Conduct 1.9. While the ethical rules do not explicitly provide for an *ipso facto* rejection of attorney fees when an attorney is disqualified due to a conflict of interest, supreme court rules have the force of law and represent the public policy of this state.

¶ 39       While Illinois courts strongly favor the freedom of contract, a court will declare a contract void if it contravenes the public policy of the state. *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563 (2009). A court will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this State. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 726 (1993) (citing *Schniederjon v. Krupa*, 130 Ill. App. 3d 656, 659, 474 N.E.2d 805, 808 (1985)). If the subject matter of a contract is illegal, that contract is void *ab initio*. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2004). "[A] contract that is void *ab initio* is treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect." *Coregis Insurance Co.*, 355 Ill. App. 3d at 164. Courts will not enforce contract terms that violate public policy. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 482 (1998) (citing *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 317-18 (1996); *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 330-31 (1994)). "The question of whether a contract is enforceable under considerations of public policy is a conclusion of law." *Holstein*, 246 Ill. App. 3d at 726 (citing *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180 (1910)).

¶ 40       Precedent establishes that our Code of Professional Conduct, part of our Supreme Court Rules, have the force of law and embody the public policy of our state. "The Illinois Code of Professional Responsibility is a Supreme Court Rule." *Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.*, 107 Ill. App. 3d 442, 447 (1982). "Supreme court rules have the force of law and are indicative of public policy in the area of attorney conduct." *Albert Brooks Friedman, Ltd. v. Malevitis*, 304 Ill. App. 3d 979, 984 (1999), *appeal denied*, 185 Ill. 2d 617 (1999) (citing *Marvin N. Benn & Associates*, 107 Ill. App. 3d at 447). "Supreme Court Rules have the function of law [citation] and thus are another strong indicator of public policy in the area of attorney conduct." *Marvin N. Benn & Associates*, 107 Ill. App. 3d at 447. Where attorney conduct is at issue, we look to the Supreme Court Rules for expressions of public policy. *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 564 (2000) (citing *Marvin N. Benn & Associates*, 107 Ill. App. 3d at 447). The Illinois Supreme Court Rules should be followed; they are not suggestions, nor are they aspirational. *In re Haley D.*, 403 Ill. App. 3d 370, 375 (2010); *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429,

447 (2008); *People v. Young*, 387 Ill. App. 3d 1126, 1127 (2009). Here, Rule 1.9 is a clear prohibition on representing a party with a conflicting interest. Thus, the contract was void *ab initio*.[2]

¶ 41 Furthermore, while the supreme court rules do not explicitly state that attorney fees are barred, the judicial decisions of our state are clear and long standing that attorney fees will not be allowed if counsel is disqualified due to a conflict of interest. "The public policy of this State is reflected in its constitution, its statutes and its judicial decisions." *Holstein*, 246 Ill. App. 3d at 726 (citing *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989)). Precedent holds that, "[g]enerally, an attorney may not receive fees after representing adverse, conflicting, and antagonistic interests in the same litigation." *In re Estate of Vail*, 309 Ill. App. 3d 435, 441 (1999). See also *In re Estate of Kirk*, 292 Ill. App. 3d 914, 923 (1997) ("It has been stated as a general principle that attorneys may not recover fees after representing adverse, conflicting, and antagonistic interests in the litigation." (citing *In re Estate of Halas*, 159 Ill. App. 3d 818, 831 (1987))); *King v. King*, 52 Ill. App. 3d 749, 753 (1977) ("An attorney cannot recover from the party that he has wronged for legal services where he has represented adverse, conflicting, and antagonistic interests in the same litigation.").

¶ 42 *King*, relied upon by David, involved a divorce case where an attorney represented one spouse after he initially consulted with the other spouse, just as in this case, and is precisely on point. In *King*, the husband visited the law office of the attorney to discuss his marital problems and the possibility of divorce. *King*, 52 Ill. App. 3d at 751. He consulted with the attorney for less than one-half hour and did not retain him. *Id*. The wife filed a complaint for separate maintenance and retained the attorney who previously consulted with her husband. *Id*. The husband filed a motion to exclude the attorney, but the trial court denied it. *Id*. The court entered a decree of separate maintenance and ordered the husband to pay the wife's attorney fees in the amount of $6,000, and the husband appealed. *Id*. at 752. The appellate court found that an attorney-client relationship existed between the attorney and the husband and that it was improper for the attorney to then undertake the representation of the wife. *Id*. at 753. The court reversed the award of attorney fees. *Id*. The court held that "[t]he rule [against representing conflicting interests] applies even though the attorney acquired no knowledge which could operate to the client's disadvantage," and "[i]t makes no difference that the client offered no compensation and the attorney neither made nor expected to make any charge for his services." *King*, 52 Ill. App. 3d at 753. Further, the motives or intentions of the attorney are irrelevant. *King*, 52 Ill. App. 3d at 753.

¶ 43 Grund and Leavitt argue that *King* is inapplicable because it was decided prior to the enactment of the Act. However, the strict bar against representing parties with conflicting interests was established as part of the public policy of our state long before the enactment of the Illinois Code of Professional Responsibility (ISBA 1970). See *People v. Gerold*, 265 Ill. 448, 477 (1914) ("The rule has long been firmly established that an attorney cannot

---

[2]We note that although the court mentioned *quantum meruit* during a hearing, Grund and Leavitt have not raised this issue on appeal and it is not properly before us.

represent conflicting interests or undertake to discharge inconsistent duties."); *Strong v. International Building Loan & Invest. Union*, 183 Ill. 97, 102 (1899) (*per curiam*) (" '[a] lawyer can, under no conceivable circumstances, recover for services rendered in the same suit to parties having opposing interests.' " (quoting *MacDonald v. Wagner*, 5 Mo. App. 56, 58 (1878))). The same result as in *King* obtains here even after the enactment of the Act.

¶ 44      Grund and Leavitt further argue that subsequent decisions have either criticized the holding of *King* or found it inapplicable, citing the Illinois decisions of *Nuccio*, and *Page v. Hibbard*, 142 Ill. App. 3d 788 (1986), *rev'd in part on other grounds*, 119 Ill. 2d 41 (1987). However, Grund and Leavitt's attempt to avoid the application of the holding in *King* is not well-founded. In *Nuccio*, we found *King* distinguishable only because the controversy existed for more than six years prior to the filing of a motion to disqualify, and therefore we found that the plaintiff forfeited any issue with regard to any conflict of interest. See *Nuccio*, 257 Ill. App. 3d at 442. We did not criticize the holding of *King*, nor did we find it inapplicable. The facts in *Page* presented no conflict of interest whatsoever. Rather, the award of attorney fees out of funds received by employers to lawyers who represent employees in suits against third parties was specifically provided for by the Workers' Compensation Act. *Page*, 142 Ill. App. 3d at 797 (citing Ill. Rev. Stat. 1983, ch. 48, ¶ 138.5(b)).

¶ 45      Grund and Leavitt nevertheless also maintain that they are entitled to their fees because the Act permits fees for good-faith, unsuccessful petitions, citing *In re Marriage of Pylawka*, 277 Ill. App. 3d 728 (1996), and *In re Marriage of McCaskey*, 167 Ill. App. 3d 860 (1988). Grund and Leavitt claim that if fees are allowed for unsuccessful good-faith petitions, they should be entitled to fees here because they "won" the two prior appeals on behalf of Hadley. We note that on Hadley's previous appeal, we reversed the court's order of disqualification and remanded for the purpose of conducting a full hearing and did not make the ultimate determination whether Grund and Leavitt were disqualified. Further, it is arguable to what extent Grund and Leavitt's defense of the prior appeals regarding their disqualification was on behalf of Hadley, as opposed to being in their own interest to stay in the case and collect their fees.

¶ 46      Also, Grund and Leavitt's citations are wholly inapposite to the facts in the case at bar. In *Pylawka* the cause was remanded and the court was ordered to reconsider the denial of attorney fees where the appellant spouse unsuccessfully, but in good faith, argued that the amount of a tax refund constituted a substantial change in circumstances and necessitated an adjustment of the other spouse's net income. *In re Marriage of Pylawka*, 277 Ill. App. 3d at 735. In *McCaskey*, the spouse sought fees after she had proceeded in good faith in an action to set the dissolution judgment aside on a jurisdictional question. *In re Marriage of McCaskey*, 167 Ill. App. 3d at 866. Neither case involved the disqualification of the attorney–only that they did not win on the merits.

¶ 47      Here, in contrast, Grund and Leavitt represented Hadley despite a clear, known conflict of interest. Where the ethical rules have been violated and counsel has represented a party with conflicting, adverse interests, counsel's purported good faith is irrelevant. "An attorney may not undertake employment that constitutes a conflict of interest, no matter how honest his motives or intentions might be." *In re Estate of Kirk*, 292 Ill. App. 3d at 922 (citing *In re LaPinska*, 72 Ill. 2d 461, 469 (1978)). Grund and Leavitt cite no authority for the

proposition that attorneys representing parties with conflicting interests should be awarded attorney fees if they are successful.

¶ 48 Finally, Grund and Leavitt argue strenuously that the purpose of section 508 of the Act and, in particular, its provision allowing an award of attorney fees directly to the attorneys, was to "level the playing field" for economically disadvantaged spouses to obtain counsel of their choosing despite intimidation tactics of wealthier spouses. However, counsel cannot simply flout the ethical rules. Rule 1.9 provides that representation of a client with conflicting interests adverse to a former client is permitted if counsel first obtains the consent of the former client. Ill. S. Ct. Rs. of Prof. Conduct, R. 1.9(a)(1) (eff. Aug. 1, 1990). However, Grund and Leavitt did not obtain David's consent. They cannot "level the playing field" by rolling over the rights of their former client, David.

¶ 49 We note that the amended Supreme Court Rules of Professional Conduct, though not in effect at the time of Grund's attorney-client relationship with David, now help resolve the problem suggested by Grund and Leavitt. Rule 1.18 provides guidance for attorneys who have an initial consultation with a prospective client, but then later desire to represent another party with conflicting, adverse interests. Under Rule 1.18, a lawyer who has had discussions with a prospective client shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter (Ill. Rs. of Prof'l Conduct, R. 1.18(c) (eff. Jan. 1, 2010)), except if:

"(1) both the affected client and the prospective client have given informed consent, or

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and that lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Ill. Rs. of Prof'l Conduct, Rs. 1.18(d)(1), (d)(2) (eff. Jan. 1, 2010).

¶ 50 Committee comment 5 to Rule 1.18 provides how this result can be achieved:

"(5) A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter." Ill. Rs. of Prof'l Conduct, R. 1.18, Committee Comment (eff. Jan. 1, 2010).

¶ 51 This blueprint for representing a spouse after having an initial consultation with the other spouse should discourage the tactical "conflicting out" of divorce attorneys by wealthier spouses that Grund and Leavitt suggest is a pervasive practice in the area of divorce law.

¶ 52 We emphasize that the Rules of Professional Conduct recognize that the practice of law is a public trust and lawyers are the trustees of the judicial system. *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 16-17 (2004). "A single focus animates our rules of professional conduct and the common law of this state: the client's best interest." *Albert Brooks Friedman, Ltd. v. Malevitis*, 304 Ill. App. 3d 979, 985-86 (1999). "[A]nything which might tend to debase the learned professions is at war with the public interest and is therefore contrary to public

policy." *Marvin N. Benn & Associates*, 107 Ill. App. 3d at 440 (citing *In re Miller*, 7 Ill. 2d 443 (1955)).

¶ 53   Here, Grund and Leavitt violated Rule of Professional Conduct 1.9, a supreme court rule having the force of law and a clear expression of the public policy against attorneys representing clients with conflicting interests. Thus, we have no difficulty in concluding, as the court did, that their contract with Hadley was void *ab initio*. Therefore, there is no contract basis upon which to award them fees.

¶ 54   Although Grund and Leavitt argue that they should be entitled to fees incurred *before* they were disqualified by the court's order, Grund violated Rule 1.9 at the moment he agreed to meet with Hadley knowing he had a conflict. Grund knew from the initial consultation with Hadley that there was a conflict of interest. The testimony by Hadley at trial was that Grund told her of the conflict. Notably, this testimony was unrebutted by Grund and Leavitt. As the court clearly stated, it is inexplicable that Hadley made it past screening and that Grund agreed to represent her. Grund was clearly prohibited by Rule 1.9 from entering into a retainer agreement with Hadley. As noted earlier in our analysis, "[a]n attorney/client relationship can be created at the initial interview between the prospective client and the attorney." *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 440 (1993) (citing *Herbes v. Graham*, 180 Ill. App. 3d 692 (1989)). Therefore, Grund is barred from any earlier fees based on either ground we have discussed: (1) the retainer agreement was unenforceable under section 508(c)(3) of the Act; or (2) the retainer agreement was void *ab initio* as against public policy.

¶ 55   Next we consider the time between the signed retainer and the disqualification.

¶ 56   Section 508(c)(3) provides, "[t]he court shall first consider the written engagement agreement" to find whether "the former client and the filing counsel *** *entered into* a contract which meets applicable requirements of court rules." (Emphasis added.) 750 ILCS 5/508(c)(3) (West 2008). The relationship of attorney and client is a contractual one and is created by a retainer or an offer to retain or fee paid. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 743 (1993). "A client must manifest his authorization for an attorney to act on his behalf and the attorney must indicate his acceptance of the authorization to represent the client's interests." *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 676 (2003) (citing *Torres v. Divis*, 144 Ill. App. 3d 958, 963 (1986)).

¶ 57   Grund and Leavitt are not entitled to any attorney fees before the court entered the disqualification order because the retainer agreement itself was void *ab initio* as against public policy due to the clear violation of Rule 1.9. At the hearing on March 10, 2009, the court cogently explained to Grund: "You don't get any [fees] because your disqualification relates to the date of the contract and in effect voids your contract to represent." In the court's memorandum opinion and order, it found that, "[c]learly, from Mr. Grund's own interrogation of Hadley it is obvious that he believed there to be a conflict and that he so informed Hadley, yet he knowingly entered into a retainer agreement with her."

¶ 58   We agree with the court's insightful and well-reasoned opinion and order, as it is in accord with both section 508(c)(3) of the Act and Rule 1.9. The conflict of interest was present at the time Grund entered into the contract with Hadley. Therefore, Grund's contract

-14-

with Hadley is unenforceable under the plain language of section 508(c)(3) (750 ILCS 5/508(c)(3) (West 2008)), as well as void *ab initio* as against public policy due to the violation of Rule 1.9 of the Supreme Court Rules of Professional Conduct.

¶ 59                                          CONTEMPT ORDER

¶ 60    Grund and Leavitt argue the circuit court erred in entering the contempt order because the underlying order denying them attorney fees was in error. In its order, the court stated:

> "The court informed Grund and Leavitt that it would not and could not hold a hearing with regard to the fees they incurred by virtue of their representation of Hadley Newton and would deny their fee petition. The court also ordered Grund and Leavitt to step away from the bench. They refused to do so and therefore it is ordered as follows:
>
> 1. The Grund & Leavitt fee petition is denied.
>
> 2. Mr. Grund and Mr. Leavitt are found to be in direct contempt of this court for their failure to obey the court's disqualification order.
>
> 3. Grund & Leavitt shall pay a fine of $100 to purge said contempt."

¶ 61    We find that the circuit court did not err in finding Grund and Leavitt in contempt based on their unwillingness to step aside, thus continuing their unwillingness to comply with the disqualification and resulting denial of attorney fees.

¶ 62    Contempt of court can result from a party's failure to comply with the terms of a court order. *People v. Coupland*, 387 Ill. App. 3d 774, 777 (2008). Persons subject to the order of a court having jurisdiction must obey the order until it is reversed by a reviewing court or set aside or modified. *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 217 (1999) (citing *People v. Graves*, 74 Ill. 2d 279, 284-85 (1979), quoting *Faris v. Faris*, 35 Ill. 2d 305, 309 (1966)). "[E]xposing oneself 'to a finding of contempt is an appropriate method of testing the validity of a court order.' " *In re Marriage of Rosenbaum-Golden*, 381 Ill. App. 3d 65, 82 (2008) (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 321 (2001)). " '[W]hether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.' " *Killion v. City of Centralia*, 381 Ill. App. 3d 711, 715 (2008) (quoting *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984)).

¶ 63    We note the well-established rule that where a " 'refusal to comply with a trial court's order constitutes a good-faith effort to secure an interpretation of [an issue without direct precedent], it is appropriate to vacate a contempt citation on appeal.' " *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 482 (2010) (quoting *Cangelosi v. Capasso*, 366 Ill. App. 3d 225, 230 (2006)). However, under the facts of this case, we find that Grund and Leavitt's refusal to comply with the circuit court's order denying them fees did not constitute a good-faith effort to secure an interpretation without direct precedent. Rule 1.9 of the Rules of Professional Conduct is clear that representing clients with conflicts of interest is prohibited. Precedent is clear that fees for such prohibited representation are barred. It is unrebutted that Grund knew of the conflict before he agreed to represent Hadley and yet

-15-

undertook to represent her anyway, thus paving his own road to the denial of fees. Therefore, the court's adjudication of civil contempt was well founded and not against the manifest weight of the evidence or an abuse of discretion.

¶ 64 Further, we note that in this very case Grund had previously been found in direct civil contempt in an order dated June 30, 2008, in which the court found: "Grund's verbal outbursts obstructed and embarrassed the court and constituted a direct defiance of a court order before a judge in open court and Grund is found to be in direct contempt of court. It is ordered that contemnor David Grund will pay to the Clerk of the Circuit Court a fine of $500.00 forthwith. Grund is remanded to the custody of the Cook County Sheriff and released upon payment of the fine. Mittimus stayed 48 hours–10:40 am 7/2/08" s/Judge Jordan."

¶ 65 The fact that the order states that Grund and Leavitt were found in direct contempt "for their failure to obey the court's disqualification order" indicates that the court was attempting to coerce compliance with its order denying Grund and Leavitt's fees. The order stated that paying the fine would purge the contempt.

¶ 66 We note that our distinguished colleagues in the Fourth District take a different approach. *In re Marriage of Samuel*, 394 Ill. App. 3d 398 (2009), is instructive. In *In re Marriage of Samuel* the circuit court entered a civil contempt order imposing a fine and ordering an apology. The appellate court found that the trial court's imposition of a fine was a punishment for improper behavior. *In re Marriage of Samuel*, 394 Ill. App. 3d at 402. However, the apology " implie[d] an admission of past conduct" and was "easily construed as a promise not to engage in similar behavior in the future," and to that extent, it was coercive and permissible as a sanction for civil contempt. *In re Marriage of Samuel*, 394 Ill. App. 3d at 402.

¶ 67 We find that the purging provision which would allow Grund and Leavitt an opportunity to purge the contempt by paying the $100 fine was well within the court's discretion in the selection of a purging provision and was remarkably restrained, given the entire record of this case.

¶ 68 CONCLUSION

¶ 69 For all the reasons stated above, we hold that the trial court did not err in denying Grund and Leavitt attorney fees from the first moment they undertook representation of Hadley based on a disqualification due to a conflict of interest. Grund and Leavitt's representation of Hadley was a known conflict of interest, in violation of Rule 1.9, and under section 508(c)(3) of the Act the retainer agreement was not enforceable. 750 ILCS 5/508(c)(3) (West 2008). Further, we affirm the court's finding of contempt and hold Grund and Leavitt had no good-faith basis to draw a contempt judgment to test the validity of the court's order denying their attorney fees due to the established conflict of interest.

¶ 70 Affirmed.